Catherine BRENNAN, Plaintiff,

v.

REYNOLDS & COMPANY, Defendant.

No. 72 C 2708.

United States District Court,
N. D. Illinois, E. D.

Nov. 7, 1973.

William D. Klink, of Klink & Klink, Chicago, Ill., for plaintiff.

Barry B. Nekritz, Ronald Wilder, and Dean A. Dickie, of Aaron, Aaron, Schimberg & Hess, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, District Judge.

This case is before me for a ruling on defendant's Motion for Summary Judgment.

Plaintiff, Catherine Brennan, alleges that defendant, Reynolds & Company, engaged in unlawful employment practices in that it discriminated against her by reason of her age, in violation of Section 4(a) of the Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 *et seq.* Plaintiff contends that she was intentionally discharged from employment by Reynolds & Company by reason of her age. She further states that she went to several employment agencies looking for work and found that "her employment opportunities were adversely affected and/or otherwise limited by defendant's statements to those employment agencies that plaintiff was fired because of her age."

Defendant contends that Miss Brennan's allegations do not state a claim upon which relief can be granted inasmuch as her discharge from Reynolds was for good cause and under 29 U.S.C. Sec. 623(f)(3) a "good cause" discharge is not actionable under the Age Discrimination in Employment Act.

To buttress its allegation, defendant has submitted as its Exhibits B and C, time sheets for the calendar year 1970 and the period up to June 25, 1971, when plaintiff was terminated from her job as office receptionist for Reynolds. These time sheets disclose that Miss Brennan arrived at work after 8:45 A. M. on at least 162 mornings in 1970 and on 48 mornings on the relevant dates in 1971. The affidavit of Frank A. Connolly, Jr., Vice President of Reynolds, states that Miss Brennan's habit of being late was particularly disturbing in that the high volume of early traffic through the reception area made it essential for the office receptionist to be on time in order to direct people to their proper destinations. According to Mr. Connolly, Miss Brennan was warned repeatedly that continued tardiness would result in her termination. According to his affidavit, a "corrective interview" took place between Mr. Jerimiah Lynch, former Operations Manager of Reynolds, and the plaintiff two months prior to her discharge at which time she was told

that further tardiness would lead to such discharge. Defendant's Exhibit D is a Personnel Action Notice, showing plaintiff's last day of actual work as June 25, 1971 and the explanation for the termination being "Tardiness—After Repeatedly Being Warned by Operations Manager." Defendant's Exhibit E is a letter written on August 16, 1971 by Mr. Lynch, delivered to Miss Brennan and made available to the Illinois State Unemployment Compensation section which states in pertinent part:

> "Miss Brennan is competent, well organized and intelligent and if she can correct the problem of tardiness, there is no reason why she should not be considered for employment as her duties at Reynolds & Co. were performed in an honest and conscientious manner."

Mr. Connolly's affidavit further states that Miss Brennan's employment records indicate that a Deputy of the Illinois Division of Unemployment Compensation concluded that Miss Brennan was discharged due to her tardiness and failure to improve after warning.

In response, plaintiff contends in an affidavit that during her period of employment she was never advised by anyone at Reynolds, including Messrs. Lynch and Connolly, that continued tardiness would result in her being fired. Plaintiff testified in her deposition that Mr. Lynch had told employment agencies that "my employment was terminated because they wanted to have a younger receptionist." To substantiate this claim, she mentioned a Mrs. Wilson, an employment counselor at Zinser Personnel Service Co. and a Mrs. Ross at the Jane Arden Personnel Agency, who purportedly had been the recipients of such information.

At this time, I have before me a most detailed set of materials in relation to a motion for summary judgment, including briefs, affidavits and depositions. I find that the issue is whether summary judgment may be granted under 29 U.S. C. Sec. 623(f)(3) of the Age Discrimi-

nation in Employment Act under the facts of this case. That Section states:

"(f) It shall not be unlawful for an employer, employment agency, or labor organization—

"(3) to discharge or otherwise discipline an individual for good cause."

The question, of course, in the granting of any motion for summary judgment is whether or not there is a genuine issue as to any material fact regardless of whether or not such an issue is raised by the formal pleadings. To allow a case that is ripe for summary judgment to go to trial is an unnecessary and wasteful exercise. Thus, it is incumbent that a court examine all the proffered materials that are extraneous to the pleadings to determine whether there is a genuine issue of material fact to be tried. Hazeltine Research, Inc. v. General Electric Co., 183 F.2d 3, 7 (C.A. 7th 1950).

After a careful analysis of the affidavits and the depositions, as well as the pleadings, I have reached the conclusion that there is only one piece of evidence that the plaintiff offers that could stand in the path of the defendant being granted summary judgment. I refer to the aforementioned affidavit of a Mrs. Dorothy Wilson concerning a conversation with Mr. Lynch. Thus, I shall interpret that affidavit in light of its express language and in light of further developments relating to its content. The affidavit states:

"NOW COMES the Affiant, DOROTHY WILSON, and sayeth as follows:

"In June of 1971 I was employed by an employment agency, ZINSER PERSONNEL SERVICE CO., as an employment counselor.

"Pursuant to my duties as such I interviewed during the latter part of June, 1971 a MISS CATHERINE BRENNAN who had come to our office looking for employment.

"As was my custom, I called up MISS BRENNAN'S former employer, REYNOLDS & CO. and talked to a MR. LYNCH and asked him why MISS BRENNAN had been fired.

"He told me that although he personally liked MISS BRENNAN there had been a meeting and as the firm had just moved to new offices a decision had been reached to hire a younger person for the position of receptionist that MISS BRENNAN had previously held."

During her deposition, Mrs. Wilson told of two telephone conversations with Mr. Lynch. In the first conversation held sometime in June of 1971, Mrs. Wilson reiterated her affidavit. The second conversation took place in July of 1971 and the exchange was as follows:

"Q. Well, now, getting back to the second conversation with Mr. Lynch, when you called him what did you say to him and what did he say to you?

"A. I asked him what type of reference he was giving to the companies that I was sending her out on interviews for.

"Q. What did he say?

"A. Then he comes back—

"Q. I'm just asking you.

"A. He was very emphatic he was giving the reference that she was tardy."

(Wilson Deposition, p. 39).

The other employment counselor that plaintiff contends was privy to Mr. Lynch's statement regarding a younger receptionist has categorically denied that she stated anything to plaintiff that could be so construed. In her affidavit she states in pertinent part:

"During the course of my interview with Catherine Brennan I never stated to her that Reynolds Securities terminated her employment because they (Reynolds) wanted to hire or to have a younger receptionist or anything which could have been so construed.

"At no time during my conversation and interview with Catherine Brennan did I ever advise her that Reynolds Securities or any of its agents had

said that she (Brennan) was terminated by Reynolds because of her age." (Ross Affidavit).

Thus, the only witness plaintiff might call at trial would be Mrs. Wilson who admittedly does not know *when* the decision to hire a 'younger' girl was made. During the deposition, defendant's counsel asked the following questions of Mrs. Wilson:

"Q. Did Mr. Lynch ever indicate to you in that conversation and the subsequent conversation as to when the decision to hire a 'younger' girl was made?

"A. No, sir.

"Q. And you assumed, did you not, that the decision was made prior to Miss Brennan's termination?

"Mr. Klink: Objection.

"A. I wouldn't have any idea." (Wilson Deposition, p. 44).

On the other hand, Reynolds & Company has denied having conducted any meeting prior to June 25, 1971 where either the termination of Catherine Brennan or the hiring of a younger woman as her replacement were considered. (Connolly Supplemental Affidavit).

This is of utmost importance for if such an alleged meeting took place subsequent to Miss Brennan's release, she would clearly have no claim against defendant for whether or not defendant hired a younger woman after her termination would not be germane to the issue. Plaintiff's failure to present meaningful evidence which could be produced at trial to refute the facts as set forth by Reynolds demonstrates that such simply would not be forthcoming. Miss Brennan does not know when the alleged meeting took place nor does Mrs. Wilson nor has plaintiff deposed Mr. Lynch in order to refute Mr. Connolly's Supplemental Affidavit.

In her deposition testimony, Miss Brennan admitted that she arrived after 8:45 A.M. in 1970 and 1971 (Brennan Deposition, pgs. 27–8). During that deposition and following exchange took place between defendant's attorney and plaintiff:

"Q. I notice, Miss Brennan, that affidavit nowhere specifically denies that you were told by Jerry Lynch that you were being terminated for tardiness, does it? In other words, nowhere in that affidavit do you deny the fact that Jerry Lynch told you you were being terminated?

"A. Nowhere do I deny it, no, that's correct, no.

"Q. Is it not the fact, Miss Brennan that on or about January (sic) 28 of 1971 Mr. Lynch did in fact advise you that you were being terminated for tardiness?

"A. Yes." (Brennan Deposition pgs. 46–7).

■ In essence, the time sheets are solid proof of Miss Brennan's predilection for tardiness. There is no doubt that Reynolds & Company had "good cause" to fire Miss Brennan. Both defendant and this Court have been unable to reveal any authority directly on point under § 623(f)(3). Therefore, I have considered analogous cases dealing with discharges for tardiness and absenteeism under 29 U.S.C. § 141 et seq., the National Labor Management Relations Act. It should also be noted that only where the "good cause" is unlawful may a court substitute its judgment for that of management as to what constitutes proper cause for discharge. P. G. Berland Paint City, 81 LRRM 1353, 1355 (1972) in which the N. L. R. B. stated:

"The mere fact that an employer may want to part company with an employee whose union activities have made him persona non grata does not per se establish that a subsequent discharge of that employee must be unlawfully discriminatory. *If the employee himself obliges his employer by providing a valid independent reason for discharge—i. e. by engaging in*

**444**

conduct for which he would have been discharged anyway—his discharge cannot properly be labeled a pretext and ruled unlawful." (Emphasis added).

◼ Section 621 is concerned about age discrimination. Its purpose is not to solve other problems about employment. In approving "discharge for *good cause*" as a defense to an action under 621, it is not my purpose to label as a "for good cause discharge" any kind of discharge other than one based "merely upon the age factor." Section 621 does not cast upon the Court the duty of determining that a discharge was, for reasons other than age, a justifiable discharge. It serves only to prevent discharge because of age alone. However, even when age is but one of a number of causes for discharge, the finding must be that the discharge was not "for good cause", within the meaning of 621. Otherwise Congressional intent expressed through the statute would be defeated. On the other hand, where the discharge is that of a person whose "age" by tradition and custom was excessive; where it actually was not the employer's consideration, discharge for other reasons would under the statute be a "good cause" discharge.

◼◼ The "good cause" claimed by defendant is heavily supported by credible evidence. I find that under Section 623(f)(3) once an employer has demonstrated that its employee's conduct is "good cause" for termination the statutory condition precedent has been satisfied and the employer's action is valid. Accordingly, I find no triable issue of material fact is involved. In light of all of the evidence, I believe the ultimate legal result to be clearly indicated. Dyer v. MacDougall, et al., 201 F.2d 265, 268 (2 Cir. 1952).

For the above stated reasons, defendant's motion for summary judgment is granted and it is so ordered, adjudged and decreed, and cause hereby is dismissed.