Thomas Y. PALMER,
Plaintiff-Appellant,

v.

The UNITED STATES of America; United States Department of Agriculture; John R. Block, Secretary of the United States Department of Agriculture; Charles W. Philpot; Johnathan C. Colville; Robert W. Harris; Craig C. Chandler; Charles Roberts; and Georgia Sherman, Defendants-Appellees.

No. 85–5526.

United States Court of Appeals,
Ninth Circuit.

Argued Nov. 8, 1985.
Decided July 18, 1986.

John S. Adler, San Diego, Cal., for plaintiff-appellant.

Kathryn A. Snyder, Asst. U.S. Atty., San Diego, Cal., for defendants-appellees.

Before JAMES R. BROWNING, WIGGINS and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

Appellant Thomas Y. Palmer ("Palmer") appeals the district court's grant of summary judgment in favor of appellees on Palmer's claim of discrimination under the Age Discrimination in Employment Act. We affirm.

## I.

## FACTS

Palmer, now sixty-two years of age, was hired by the United States Forest Service in December 1967. He holds a masters degree in meteorology. He was initially employed by the Forest Service as a research meteorologist at a forest fire laboratory in Riverside, California (Government Service, level 14 (GS–14)). In December 1969, he was promoted to the position of supervisory research meteorologist (GS–15). Palmer served as the project leader and research meteorologist on "Project Flambeau," later renamed the mass fire systems project, a forest fire behavior research project based at the Riverside lab. A significant part of the project's funding was provided by the United States Department of Defense.

Dr. Charles Philpot, Assistant Director for Continuing Research in Southern California and Hawaii, was Palmer's immediate supervisor. In August 1975, Dr. Philpot recommended to his supervisor, Paul Guilkey, that the mass fire systems project be abolished. This recommendation had been under consideration by Dr. Philpot's predecessor. The Department of Defense stopped providing funds for the project in the late 1960's significantly reducing the scale of the project. The importance of the project also was reduced by the Forest Service. In April 1976 the project and Palmer's position were abolished.

Palmer was offered a research meteorologist position at the fire laboratory in Macon, Georgia (GS–14) in smoke management research. Palmer contends that the

position was created exclusively for him and was not filled either before or after it was offered to him. Palmer alleges that the job description was "beefed-up" for him, from grade 5 to grade 14. Appellees contend, however, that funds for this position had been available for several years and that position descriptions for research scientists are sometimes not written until a specific person is available to fill the position.

Palmer rejected the offer of research meteorologist at Macon, Georgia, for family health reasons. His employment with the Forest Service was terminated in April 1976. He was 51 years old.

The Forest Service and the United States Department of Agriculture determined that Palmer had not been discriminated against on the basis of his age. After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Palmer brought this suit in district court claiming age discrimination in violation of the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 633a) (1982). He requested back pay, damages and attorney's fees and costs.

On August 10, 1984, appellees moved for summary judgment. The district court granted the motion on January 10, 1985, finding that Palmer failed to make out a prima facie case of age discrimination.

## II.

## ANALYSIS

### A.  *Standard of Review*

We review a grant of summary judgment *de novo. Lojek v. Thomas,* 716 F.2d 675, 677 (9th Cir.1983). The reviewing court must determine, viewing the evidence in the light most favorable to the opposing party, if there is any genuine issue of material fact and whether the law was correctly applied. *Amaro v. Continental Can Co.,* 724 F.2d 747, 749 (9th Cir.1984); *Lojek,* 716 F.2d at 677; Fed.R.Civ.P. 56(c).

Although summary procedures should be used prudently, "particularly in cases in-

volving issues of motivation or intent" in ADEA claims, *Douglas v. Anderson,* 656 F.2d 528, 535 (9th Cir.1981), such relief may nonetheless be appropriate. *See Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983).

### B.  *Age Discrimination*

#### 1.  Introduction

Appellant claimed he was discriminated against on the basis of his age in violation of 29 U.S.C. § 633a, applicable exclusively to Federal employees, and which provides in part:

> All personnel actions affecting employees or applicants for employment who are at least 40 years of age ... in executive agencies as defined in Section 105 of Title 5 ... shall be made free from any discrimination based on age.

The upper age limit under the ADEA is 70 years of age. 29 U.S.C. § 631(a)(1982).

A plaintiff alleging discrimination under the ADEA may proceed under either of two theories: disparate treatment or disparate impact. *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1458 (9th Cir. 1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986); *Douglas v. Anderson,* 656 F.2d at 531 & n. 1. Under the disparate treatment theory the employee must show discriminatory motive by the employer. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Am. Fed. of S., C., & Mun. Emp. v. State of Wash.,* 770 F.2d 1401, 1405 (9th Cir.1985) (the plaintiff "must show the employer chose the particular policy because of its effect on members of a protected class"). Discriminatory motive need not be shown under the disparate impact theory. *Teamsters,* 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. The requirements under this theory, however, may be more exacting. "A disparate impact plaintiff 'must not merely prove circumstances raising an inference of discriminatory impact; he must prove the discriminatory impact at issue.'" *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 482

(9th Cir.1983) (quoting *Johnson v. Uncle Ben's, Inc.*, 657 F.2d 750, 753 (5th Cir. 1981), *cert. denied*, 459 U.S. 967, 103 S.Ct. 293, 74 L.Ed.2d 277 (1982)).

■ The criteria applied to a Title VII discrimination claim also apply to claims arising under the ADEA. *Douglas v. Anderson*, 656 F.2d at 531. *See also Kelly v. American Standard, Inc.*, 640 F.2d 974, 984 (9th Cir.1981) (quoting *Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir.1980)).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973), the Supreme Court allocated the burdens of proof for a Title VII claim. First, the plaintiff must establish a prima facie case of discrimination. When a motion for summary judgment is involved, a prima facie case refers to the plaintiff's burden of "producing enough evidence to permit the trier of fact to infer the fact at issue." *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207 (1981). Second, if the plaintiff can show a prima facie case the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer carries this burden the plaintiff has the opportunity to prove by a preponderance of the evidence that the employer's stated reason for plaintiff's rejection was in fact a pretext for discrimination, and not the true reason for his discharge. *Id.* at 804–05, 93 S.Ct. at 1825–26.

### 2. Disparate Treatment

■ An employee can establish a prima facie case of age discrimination under the disparate treatment theory by showing he: "(i) was a member of the protected class, (ii) was performing his job in a satisfactory manner, (iii) was discharged, and (iv) was replaced by a substantially younger employee with equal or inferior qualifications."[1] *Douglas v. Anderson*, 656 F.2d at 533.

■ Here, Palmer proved that he was a member of the protected class and was discharged. Nothing indicates that Palmer's performance was unsatisfactory. Consequently, Palmer has satisfied three of the criteria necessary to establish a prima facie case of age discrimination.

Palmer was not, however, replaced by a substantially younger employee with equal or inferior qualifications. Palmer's position was abolished in April 1976 and he was not replaced. Palmer alleged that Andrew Stein performed some of the duties of Palmer's position following Palmer's discharge. Mr. Stein was 57 years old at the time—6 years older than Palmer. Replacement by an older employee suggests no discrimination, unless there is other direct or circumstantial evidence to support an inference of discrimination. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n. 9 (1st Cir.1979). Palmer did not produce any evidence to support an inference of discrimination.

Here a reduction in work force occurred and Palmer was not replaced. The fact that Palmer was not replaced by a younger employee is not necessarily fatal to his claim. *Haydon v. Rand Corp.*, 605 F.2d 453, 454 n. 1 (9th Cir.1979) (per curiam). Palmer argues that the Forest Service failed to follow applicable personnel regulations during the reduction in force at Riverside, and alleged that when he was informed his position would be abolished, Dr. Philpot told him that there were several names on the reduction in force list. The district court determined that this list was only a preliminary computer list.[2] The fi-

---

1. A prima facie case may be established by production of direct evidence of discrimination. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 n. 12, 1016–17 (1st Cir.1979). No direct evidence of age discrimination has been produced here.

2. The procedure used in Palmer's case was as follows: Palmer's "competitive area" (geographical area for reassignment) and "competitive level" (interchangeability of job titles) were determined. Palmer's competitive area was agency wide, which occurs for employees at GS-13 and above. A preliminary list of positions

nal retention register list included Palmer and Charles Roberts. Because Mr. Roberts had more seniority than Palmer, Palmer was selected to be released from his competitive level. Under the applicable regulations, management could then offer Palmer a vacant position within his competitive area. 5 C.F.R. § 351.201(b) (1984). Plaintiff was offered the research meteorologist position in Macon, Georgia, which he declined to accept.

Palmer alleges that the Forest Service intentionally discriminated against him because the Macon position was specially created for him. Palmer contends that the Forest Service knew he would not be able to accept the Macon position because it would be injurious to his wife's health. Palmer did not, however, inform his supervisors about his wife's health condition. He did not produce any evidence that the Forest Service was aware of his inability to move, except for a declaration made after his discharge, and Palmer did not decline the position until the last day the offer was held open. Moreover, his employee profile, released by the U.S. Department of Agriculture, showed that Palmer had stated that he was available for a transfer or reassignment, with or without a promotion, in three other states as well as Australia and Europe. The district court properly concluded that appellant could not seriously contend that the Forest Service knew in advance that he would not accept the position.

Palmer also argued that he was eligible to "bump" his supervisor, Dr. Philpot, who was 37 years old at the time of Palmer's discharge. The district court determined, and we agree, that Dr. Philpot was properly excluded from the retention register because managerial officials are placed in a separate category from other nonsupervisory positions. 5 C.F.R. § 351.403(b)(5) (1984). Also, Palmer lacked the qualifications required to hold Dr. Philpot's position. *See* 5 C.F.R. § 351.701(a); Supple-

mental Declaration of Robert G. Rippey, CR 84, Appendix F. Based on the deposition and declaration of Robert G. Rippey, supervisory personnel staffing specialist, the district court concluded that the Forest Service had complied with the applicable personnel regulations and procedures. Palmer did not present any contradictory evidence.

Finally, Palmer argues that management personnel had stated, both prior to and subsequent to his discharge, that they were dissatisfied with the high median age of researchers in the Forest Service and that project leaders at the Riverside lab, were "getting too old." Palmer testified in his deposition, however, that he had never heard any statements by management complaining about older scientists. He further testified that he had received the information secondhand.

### 3. Disparate Impact

Although Palmer did not specifically allege discrimination under the disparate impact theory in his first amended complaint, the district court determined that the attachments Palmer submitted in support of his complaint raised issues of discriminatory impact.

■ A disparate impact case involves "employment practices which, although facially neutral, fall more harshly on one group than another and cannot be justified by business necessity." *Foster*, 772 F.2d at 1458. To make out a prima facie case of discrimination under the disparate impact theory the plaintiff usually must show: "(1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [age] produced by the employer's facially neutral acts or practices." *Spaulding v. University of Washington*, 740 F.2d 686, 705 (9th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). The plaintiff must prove the discriminatory impact at

which might be interchangeable with Palmer's position was compiled. This list was screened to determine which positions were actually in-

terchangeable. A final list, known as the retention register, was developed.

issue; raising an inference of discriminatory impact is insufficient. *Moore*, 708 F.2d at 482.

Palmer produced two statistical studies [3], implying that while the Forest Service's reduction in force and "no bumping" policy were facially neutral, they had a discriminatory impact. The first study was compiled in 1982, six years after Palmer's discharge, by two Forest Service employees affected by 1982 budget reductions in Redding, California. The district court found that this study did not create a genuine issue of material fact "as to the existence of a discriminatory impact in the Forest Service's 1976 reduction in force at the Riverside Station or to demonstrate that the Service's no bumping policy had such an effect in 1976." We agree.

Palmer also produced his own statistical evidence. His study compares the ages of employees at the Riverside station in 1976, the year he was discharged, to the ages of Riverside employees in 1978 and 1984. Palmer's study showed only that the ages of certain employees at the Riverside station appeared to have declined after Palmer was discharged. As the district court stated:

> Plaintiff's simple proof that the age of employees declined over time is patently insufficient; he has not demonstrated any relationship between the challenged agency actions and the decline in ages with regard to the pool of employees eligible to be affected by the disputed agency actions.

The district court also concluded that the sample size of Palmer's study was inaccurate. In 1976 there were 13, not 10, supervisors at Riverside. In 1978, Palmer claimed there were only 7 supervisors when actually there were 15. In 1984, appellant did not identify the source of the sample and it was incorrectly based on the ages of 5 supervisors; actually there were 7. Statistics used to establish a prima facie case are not irrefutable and their effective-

ness depends on "all of the surrounding facts and circumstances." *Teamsters*, 431 U.S. at 340, 97 S.Ct. at 1857. Here, Palmer's statistical proof is unpersuasive; his sample size is too small to have any predictive value and we must disregard it. *Morita v. Southern California Permanente Medical Group*, 541 F.2d 217, 220 (9th Cir.1976), *cert. denied*, 429 U.S. 1050, 97 S.Ct. 761, 50 L.Ed.2d 765 (1977). Palmer's study fails to prove discriminatory impact.

■ Statistics also may be used to establish a prima facie case of discrimination under the disparate treatment theory. *Diaz v. American Telephone & Telegraph*, 752 F.2d 1356, 1363 (9th Cir.1985). For Palmer to show a prima facie case of disparate treatment based solely on statistics he must show a " 'stark' pattern" of discrimination unexplainable on grounds other than age. *See Gay v. Waiters' and Dairy Lunchmen's Union*, 694 F.2d 531, 552 (9th Cir.1982) (quoting *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977)).

The issue in a disparate treatment case is "whether a particular isolated historical event was discriminatory." *Ward v. Westland Plastics, Inc.*, 651 F.2d 1266, 1270 (9th Cir.1980) (per curiam). Statistical evidence that shows "chance is *not* the more likely explanation [is] not by [itself] sufficient to demonstrate that [age] *is* the more likely explanation for an employer's conduct." *Gay*, 694 F.2d at 553. Palmer's statistics, standing alone, fail to establish a prima facie case under the disparate treatment theory, and he has not produced any direct or circumstantial evidence to bring "the cold numbers convincingly to life." *Teamsters*, 431 U.S. at 339, 97 S.Ct. at 1856.

## C. Request for Discovery

■ Palmer contends that he was prevented from obtaining certain statistical

---

**3.** Statistical studies may serve "an important role" in establishing a prima facie case in discrimination suits. *Teamsters*, 431 U.S. at 339,

97 S.Ct. at 1856; *see also McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. at 1825.

data necessary to compile a more accurate study. In his third set of interrogatories, Palmer attempted to obtain additional data he thought necessary to produce a more accurate study. Appellees moved for a protective order. On October 10, 1984, a Federal magistrate granted the order in part.

We reject Palmer's claim because he failed to appeal the magistrate's ruling to the district court within 10 days after the entry of the order. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). The record does not show that Palmer ever complained to the district court that he was improperly denied discovery. Consequently, he is precluded from raising it here.

## CONCLUSION

Palmer has failed to establish genuine issues of material fact concerning his claim of intentional discrimination under the ADEA. He also failed to timely appeal the magistrate's discovery order to the district court.

The judgment of the district court is AFFIRMED.