Cecil PHIPPS, an individual, Plaintiff,

v.

GARY DRILLING COMPANY, INC., a California corporation; and Does 1 Through 20, inclusive, Defendants.

No. CV–F–88–263 REC TS.

United States District Court, E.D. California.

Aug. 4, 1989.

Stuart H. Young, Jr., Ronald W. Novotny, Hill, Farrer & Burrill, Los Angeles, Cal., for defendant Gary Drilling.

Robert J. Noriega, Noriega & Alexander, Bakersfield, Cal., for plaintiff.

## DECISION AND ORDER RE MOTION FOR SUMMARY JUDGMENT

COYLE, District Judge.

On July 24, 1989 the court heard defendant's Motion for Summary Judgment. Upon due consideration of the written and oral arguments of the parties, the court now enters its order granting the motion as set forth herein.

Defendant Gary Drilling Co., Inc. moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on the basis that there is no genuine issue of material fact as to plaintiff's claims of age discrimination in the termination of his employment with defendant.

### I. Statement of Facts.

Plaintiff Cecil Phipps was employed between 1969 and February 13, 1987 by defendant Gary Drilling Co., Inc., which is engaged in the business of oil and gas drilling. During the last sixteen years of his employment, plaintiff was employed as a truck driver with responsibilities for hauling equipment and materials from one drilling site to another.

The incident culminating in plaintiff's termination occurred on February 10, 1987 when plaintiff's truck hit an energized power line during the move of a drilling rig. The power line was struck by the top portion of a "dog house" (portable changing quarters for on-site drilling employees) which had been loaded by plaintiff at an angle onto his A-frame truck in a "propped" position. Loading the dog house onto the truck in the propped position as opposed to a "flat" position, in which the poles supporting the dog house are dropped, added two feet to the height of the load from the ground up. It is undisputed that had plaintiff loaded the dog house in the flat position on the day of the move, it would have missed the power line completely. It is also undisputed that when, on the morning of the move, drilling crew member Lloyd Lewis asked plaintiff if he was going to "drop the poles" while loading the dog house, plaintiff replied that he was not.

Both at the time of the incident and at all relevant times preceding it defendant had a policy, which had been clearly expressed to its drivers, against hitting power lines. The policy provided for the discipline of drivers who hit power lines because of the obvious potential damage to life and property that could result from such incidents. Plaintiff was undeniably aware of this policy when he hit the power line on February 10, as he conceded to co-employee Lewis immediately after the incident that he

would probably "get run off" (i.e., fired) because he struck the power line that morning. He also admitted in his deposition testimony that he had knowledge of such a policy.

In addition, the incident on February 10 was the third occasion known to defendant in which plaintiff hit a power line during his employment. Plaintiff had been reprimanded and given a seven-day suspension without pay for hitting power lines on two prior occasions. At the time of the disciplinary suspension, plaintiff was expressly warned that he would be fired if he hit another power line. Also, field supervisor Les Blankenship, known as the "tool pusher" on the February 10 rig move, was suspended for a week without pay for failing to instruct plaintiff to lower the dog house flat on the bed of his truck after having observed it in the propped position.

Defendant's Secretary–Treasurer Gary Green decided to terminate plaintiff, and on February 13, 1987 his decision was communicated to plaintiff. Plaintiff was thereafter given an opportunity to appeal the decision to Ed Green, the company president, with whom plaintiff met pursuant to such an appeal on February 14. During the meeting with Ed Green, plaintiff volunteered that he had hit some ten power lines during the course of his employment with defendant. Plaintiff also stated that other drivers hit power lines without penalty but, when asked for names, refused to disclose the identity of these other alleged drivers so that the company could investigate his claim that he was being disciplined more harshly. Company president Ed Green decided to uphold the termination decision as a result of this meeting. On May 5, 1987 plaintiff was replaced by Russell Spotts who was 41 years old at the time. Plaintiff essentially alleges that he was discriminated against on the basis of age because he was 58 years of age at the time of his discharge and was replaced by an employee 17 years his junior.

## II. Age Discrimination.

■ Plaintiff's sole claims for relief in this action are for age discrimination under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the California Fair Employment and Housing Act, California Government Code § 12941 ("FEHA"). Congress originally passed the ADEA for the purpose of promoting "employment of older persons (over forty years of age) based on ability rather than their age." 29 U.S.C. § 621; *see Dorsch v. L.B. Foster Co.,* 782 F.2d 1421 (7th Cir.1986). To carry out this purpose, the ADEA provides that:

> (a) It shall be unlawful for an employer
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a). Thus, to establish a violation of the ADEA, a plaintiff must prove that an adverse employment decision was made because of his age. *Dorsch, supra.* It is not enough that age discrimination be present or even that it figure in the decision to fire; age must "make a difference" between termination and retention. *Cancellier v. Federated Department Stores,* 672 F.2d 1312, 1315 (9th Cir. 1982). A plaintiff is therefore required to establish that age was a "determining factor" in the sense he would not have been adversely affected in his employment "but for" the employer's motivation to discriminate because of age. *Kelly v. American Standard, Inc.,* 640 F.2d 974 (9th Cir. 1981); *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979).

■ A plaintiff may prove his case of age discrimination with direct or circumstantial evidence. *Johnson v. University of Wisconsin–Milwaukee,* 783 F.2d 59 (7th Cir.1986). Since plaintiff concededly has no direct evidence of age discrimination of any kind, he will be required to attempt to prove age discrimination circumstantially under the method of proof set forth in the leading case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and further explained in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67

L.Ed.2d 207 (1981), which has been held applicable to age discrimination cases arising under both the ADEA and the FEHA. *Kelly v. American Standard, Inc., supra; Sorosky v. Burroughs Corp.*, 37 F.E.P.C. (BNA) 1510 (C.D.Cal.1985), *aff'd in rel. part*, 826 F.2d 794 (9th Cir.1987). Given the parallel nature of prohibitions against age discrimination in the ADEA and FEHA, the state act has been interpreted and applied consistently with the federal act. *See Gay Law Students v. Pacific Telephone and Telegraph Co.*, 24 Cal.3d 458, 156 Cal.Rptr. 14, 595 P.2d 592 (1979); *County of Alameda v. F.E.H.C.*, 153 Cal. App.3d 499, 200 Cal.Rptr. 381 (1984); *see also Sterling Transit Corp. v. F.E.H.C.*, 121 Cal.App.3d 791, 175 Cal.Rptr. 548 (1981) ("California's Act is similar in scope to the federal law regarding acts made unlawful and the defenses available to employers who seek to justify refusals to hire or retain persons within the protected class.").

■ Under the *McDonnell Douglas–Burdine* standard, a plaintiff must first establish a prima facie case of discrimination. If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its decision and, if the defendant does so, the plaintiff must prove that the employer's articulated reason is actually a pretext or cover-up for discrimination. *Sutton v. Atlantic Richfield Co.*, 646 F.2d 407 (9th Cir.1981). However despite these shifting burdens, the plaintiff has the ultimate burden of persuasion that "but for" his age, he would not have been adversely affected by the employment decision. *Douglas v. Anderson*, 656 F.2d 528 (9th Cir.1981). In the traditional discipline or discharge case, an employee may normally establish a prima facie case of age discrimination under the ADEA by showing: 1) that he belongs to a protected class (age 40 or above); 2) that his job performance was sufficient to meet the employer's legitimate expectations; 3) that he was discharged in spite of his performance; and 4) that the employer sought a replacement for him. *Palmer v. United States*, 794 F.2d 534 (9th Cir.1986);

*Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir.1987).

This initial burden, however, is not an insubstantial one—the prima facie case must be supported by evidence that gives rise to an inference of unlawful discrimination. *Jurado v. Eleven–Fifty Corp.*, 813 F.2d 1406 (9th Cir.1987); *Yartzoff v. Thomas*, 809 F.2d 1371 (9th Cir.1987). Failure to produce "specific facts" that establish the existence of a prima facie case renders a grant of summary judgment appropriate. *Id.; Palmer, supra.* Mere assertions of discriminatory motive and intent are inadequate. "A party opposing sumary judgment must, in a manner 'as would be admissible in evidence,' set forth 'specific facts showing that there is a genuine issue for trial.' Federal Rule of Civil Procedure 56(e)." *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453 (9th Cir.1985). In other words, the evidence must be sufficient to identify actions which, if unexplained, give rise to an inference of discriminatory conduct. *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Foster, supra.*

A. Prima Facie Case.

■ Defendant contends that plaintiff is unable to establish a prima facie case of age discrimination because he cannot prove that he was performing his job at a level that met the employer's legitimate expectations. *Palmer, supra.* The undisputed facts clearly establish that plaintiff hit power lines on at least three separate occasions. As an employee with sixteen years of experience as a truck driver, plaintiff was well aware of the danger of hitting power lines and defendant's policy against doing so. He apparently understood the repercussions of the incident, because he had been expressly told that he would be fired for hitting a power line after receiving a warning and one-week suspension for doing so on two prior occasions.

Defendant also points out that the accident was clearly avoidable, as it would not

have happened had the dog house not been loaded in the propped position. Moreover it was foggy that morning, another reason for lowering the dog house before transporting it. In addition, plaintiff admitted that he had hit power lines some ten times during the course of his employment, confessing that these incidents were "bonehead mistakes." Consequently, it seems clear that plaintiff's job performance did not meet the legitimate expectations of his employer and, therefore, that he cannot establish a prima facie case of age discrimination.

Plaintiff's only argument in opposition to defendant's contention that his performance did not meet its expectations is that several other employees have stated in their depositions that plaintiff is a good driver who is qualified and reliable. While this testimony might show that plaintiff is qualified, it does not establish that he met defendant's expectations for job performance. *See Long v. First Family Financial Services,* 677 F.Supp. 1226 (S.D.Ga. 1987). Plaintiff argues that the two are equivalent. Of course, plaintiff does not even address the two prior violations of the policy or his admission that he has hit some ten power lines during his employment with defendant. Instead, plaintiff relies on the fact that the Ninth Circuit case of *Kelly v. American Standard, Inc., supra,* states that in order to establish a prima facie case of age discrimination, plaintiff need only prove: 1) his membership in the protected class; 2) his discharge; 3) his qualifications for the position; and 4) his replacement by one outside the protected class. However, he ignores the fact that the United States Supreme Court, in *McDonnell Douglas, supra,* held that one of the determining factors was whether plaintiff was performing the job in a satisfactory manner. This ties in to the express statutory "good cause" defense and defendant's business justification for its decision, factors which plaintiff also chooses to ignore. But, as set forth below, even if plaintiff could establish a prima facie case, defendant clearly has legitimate, nondiscriminatory business reasons for discharging plaintiff.

## B. "Good Cause" Defense.

■ "Good cause" for discharge also constitutes a statutory defense to an age discrimination claim. *See* 29 U.S.C. § 623(f)(3); *see also Anderson v. Viking Pump Division,* 545 F.2d 1127 (8th Cir. 1976). Once an employer has demonstrated that an employee's conduct provides "good cause" for termination, the statutory condition precedent has been satisfied and the employer's action is valid. *Brennan v. Reynolds and Co.,* 367 F.Supp. 440 (N.D. Ill.1973). In examining an employer's "good cause" defense, the court is not ultimately concerned with whether or not the reasons proffered by the employer are objectively true or false, but only whether a plaintiff can establish that there was no reasonable or rational basis for the employer's decision. *See Havelick v. Julius Wile Sons & Co.,* 445 F.Supp. 919 (S.D.N.Y. 1978) and cases cited therein. So long as the employer's decision was made in the exercise of good faith business judgment, and for a reason other than the plaintiff's age, the statutory defense is established. *Id.; see also Bishop v. Jelleff Associates,* 398 F.Supp. 579 (D.D.C.1974).

■ The ADEA was not intended as a vehicle for the general judicial review of business decisions. *Douglas, supra.* Nor does the court sit as a "super personnel department that re-examines entities' business decisions." *Dale v. Chicago Tribune Co.,* 797 F.2d 458 (7th Cir.1986). A court therefore will not re-evaluate business decisions made in good faith, even though they have some negative impact on age-protected individuals, and will not "second guess" an employer's business judgments in an effort to find some possible violation of the Act. *Bechold v. I.G.W. Systems, Inc.,* 817 F.2d 1282 (7th Cir.1987). Only when the "good cause" relied upon is unlawful may a court substitute its judgment for that of management as to what constitutes proper cause for discharge. *Brennan, supra.*

■ Hence, in order to avoid the prohibitions of the ADEA, an employer need only establish that its decisions are premised

upon rational business judgments which are made in good faith and not actuated by age bias. *Havelick, supra.* As the court there stated:

> To conclude otherwise would make federal courts a super board of directors reviewing bona fide management decisions, a procedure Congress clearly did not intend by passage of this Act. *Bishop v. Jelleff Associates, supra,* 398 F.Supp. at 593.

An ADEA plaintiff therefore cannot raise a triable issue of age discrimination by simply arguing about the fairness of the defendant's evaluation of his work performance, even with the testimony of coworkers or other employees of the defendant. *Murre v. A.B. Dick Co.,* 625 F.Supp. 158 (N.D.Ill.1985). As the court stated in *Elliott v. Group Medical and Surgical Service,* 714 F.2d 556 (5th Cir.1983):

> *McDonnell–Douglas* is not a vehicle that permits a plaintiff to cast the burden of persuasion on the defendant and compel him to prove that his actions were nondiscriminatory. *See Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24 [, 99 S.Ct. 295, 58 L.Ed.2d 216] (1978). Nor is it a device which permits the jury to examine an employer's reasons for discharge and determine that the employer's business judgment or policies do not appeal to its sensibilities. The inquiry is whether the plaintiff has been discriminated against because of his age; the A.D.E.A. prescribes no other conduct.

Particularly interesting is the case of *Mechnig v. Sears, Roebuck and Co.,* 864 F.2d 1359 (7th Cir.1988), cited by defendant, in which the court affirmed summary judgment for an employer who had terminated an employee with thirty-two years seniority for entering a 30–minute falsification on his time card. There, as in the instant case, the employee had been warned about past violations of the rule and had acknowledged that future violations would subject him to dismissal. The court, confining its inquiry to whether the plaintiff's age was the determining factor in the discharge decision, properly refused to second guess the employer's decision no matter how "mistaken" it may have appeared to be.

Poor work performance, including violations of company policy, certainly would constitute ample justification for disciplining or terminating employees without running afoul of the proscriptions of either state or federal age discrimination laws. As the district court stated in *Sorosky v. Burroughs Corp., supra,* 37 F.E.P.C. at 1517:

> [T]he age discrimination provisions of the California Fair Employment and Housing Act, Cal. Government Code § 12941 ("F.E.H.A."), do not prevent an employer from terminating an employee for poor performance or from selecting a more highly qualified employee or applicant for a position.

Clearly, plaintiff's poor work performance would constitute "good cause" for discharging plaintiff under the circumstances of this case. Therefore, even if plaintiff could establish a prima facie case, defendant has articulated a legitimate, nondiscrimintory reason for its decision. Consequently, under the *McDonnell Douglas–Burdine* standard, the burden of proof now shifts back to plaintiff to prove that the employer's articulated reason is actually a pretext or cover-up for discrimination. *Sutton, supra.* But despite these shifting burdens, plaintiff has the ultimte burden of persuasion to show that "but for" his age, he would not have been adversely affected by the employment decision. *Foster, supra; see also Lowe v. City of Monrovia,* 775 F.2d 998 (9th Cir.1985). Age must be shown to have been a "determining factor" in the decision to discharge. *Kelly, supra; Cancellier, supra.*

## C. Pretext/Discriminatory Intent.

■ Because the court concludes that defendant has shown a legitimate reason for plaintiff's discharge based upon poor job performance, plaintiff must now demonstrate that the employer's alleged reason for the discharge is a pretext for discrimination. *McDonnell Douglas, supra.* Plaintiff's age discrimination claim is based in part upon the fact that he was replaced

by a younger employee. Replacement by a younger employee alone, however, does not prove age discrimination or even create a strong presumption of discrimination which might otherwise arise in race or sex discrimination cases in which a protected employee is replaced by someone outside the protected category. The court in *Laugesen v. Anaconda Co.*, 510 F.2d 307 (6th Cir. 1975) stated in a footnote that

> [t]he progression of age is a universal human process. In the very nature of the problem, it is apparent that in the usual case, absent any discriminatory intent, discharged employees will more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in. This factor of progression and replacement is not necessarily involved in cases involving the immutable characteristics of race, sex, and national origin. *See also Chamberlain v. Bissell, Inc.*, 547 F.Supp. 1067 (W.D.Mich.1982).

■ Thus, no inference of age discrimination exists in this case by the mere fact that plaintiff, who was 58 years old at the time of his discharge, was replaced approximately three months later by Russell Spotts, who was 41 years old. Indeed, the fact that Spotts himself was within the protected age group at the time of his assumption of plaintiff's duties constitutes probative evidence dispelling an age discrimination motive. *Price v. Maryland Casualty Co.*, 561 F.2d 609 (5th Cir.1977); *Sorosky v. Burroughs Corp., supra*, 37 F.E.P.C. at 1518.

Defendant directs the court's attention to the fact that employees within the protected age class comprised approximately 20% of its total workforce between the years of 1981 to 1988, and approximately 40% of its employees in the truck driver classification during those years. In addition, of the 153 terminations during those years in which the ages of the employees were known, only fifteen (or less than 10%) were over the age of forty. Such evidence of substantial representation of older workers in the workforce and of the absence of any negative impact of any employer policy or practice on such workers strongly rebuts any inference that an employer was motivated to discriminate against a particular employee based on his age. *Marshall v. Hills Bros.*, 432 F.Supp. 1320 (N.D.Cal. 1977); *Magruder v. Selling Areas Marketing, Inc.*, 439 F.Supp. 1155 (N.D.Ill.1977).

As the court stated in *Sorosky v. Burroughs Corp., supra*, 37 F.E.P.C. at 1519, the "continued employment of a significant number of individuals in their forties and fifties at the time of plaintiff's layoff ... is directly inconsistent with an alleged purpose to oust plaintiff because of age." *See also Williamson v. Owens–Illinois, Inc.*, 589 F.Supp. 1051 (N.D.Ohio 1984). In addition, defendant shows in it Statement of Uncontroverted Facts that it has disciplined other employees in the past both under and over the age of 40 for hitting power lines. Thus, plaintiff has failed to produce any evidence to substantiate his claim of discriminatory intent or age as a determining factor in defendant's decision to discharge.

The main focus of plaintiff's Opposition, however, is the issue of disparate treatment. He contends that his supervisor also should have been terminated, but that the supervisor instead received favorable treatment. He states in his Opposition that "defendant established a policy that the truck driver *and the tool pusher* would be terminated for hitting a power line." The supervisor was only suspended. He states that the supervisor was equally responsible for the incident, since he apparently failed to tell plaintiff to lower the poles. He presents deposition testimony to the effect that, generally, drivers would not lower the poles unless instructed to do so by the tool pusher since it was considered only a "location move." In addition, he states that the supervisor was twice disciplined before in the form of a demotion from tool pusher to driller. Consequently, he contends, the only factor which supports the present difference in treatment is age, since his supervisor is only 33 years old.

■ Defendant argues, however, that a supervisor may be disciplined less severely than a rank-and-file employee. Defendant

contends that the decision of whether or not to retain managerial employees is a legitimate exercise of business judgment which is protected by the ADEA. *Douglas v. Anderson, supra.* Defendant states that Title VII, which has been interpreted in a fashion similar to the ADEA, does not take away an employer's right to interpret its work rules as it chooses. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181 (11th Cir.1984). And while plaintiff cites to cases relating to discriminatory application of work rules, it has been held that prima facie age discrimination claims are established only when *similarly situated* employees are disciplined more harshly for violating the *same work rule. Anderson v. Savage Laboratories, Inc.,* 675 F.2d 1221 (11th Cir.1982); *Powell v. Rockwell International Corp.,* 788 F.2d 279 (5th Cir.1986). Defendant also cites to the case of *Fong v. American Airlines, Inc.,* 626 F.2d 759 (9th Cir.1980), in which the court affirmed summary judgment for an employer when an employee established that a work rule requiring discharge for theft was inconsistently applied, but failed to prove that the rule was selectively enforced on the basis of a prohibited criterion (race).

Defendant argues that plaintiff was ultimately responsible for the loading of the doghouse onto the truck, and was specifically warned prior to the incident that he would be terminated. Also, plaintiff failed to point out that the supervisor's two previous demotions were not in connection with power line incidents. Therefore, plaintiff and his supervisor are not similarly situated employees, both in terms of their respective positions with the company and their prior disciplinary incidents. In any event, plaintiff has failed to prove that the rule was selectively enforced on the basis of age. In *Loeb, supra,* the court stated that

> [w]hile an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason ... does not

have to be a reason that the judge or jurors would act on or approve.

Consequently, plaintiff is unable to establish a prima facie case of age discrimination by his mere assertion that defendant suspended the supervisor rather than discharged him, as that fact alone does not raise any material issue of discriminatory intent.

■ Plaintiff also presents the deposition testimony of former employee Bill Underwood who alleges that he was involved in several such incidents, but that he was not disciplined. While Underwood apparently was fired at one point, plaintiff states that he received only warnings until his fourth incident and that he received no discipline for his fifth and sixth incidents which took place after he was rehired. Again, however, plaintiff fails to point out that three of the incidents involved hitting parked cars, not the much more dangerous situation involved with hitting power lines. The policy at issue concerning plaintiff is only that policy dealing with power lines.

But more importantly, plaintiff does not present evidence that defendant, especially those who were directly involved in the decision to terminate plaintiff, ever had knowledge of Underwood's three alleged incidents involving power lines. These incidents apparently were not reported, and defendant did not know of these incidents until Underwood's deposition testimony was taken. While plaintiff identified Underwood as a person who had knowledge of information regarding his claim, he failed to provide any information as to Underwood having struck power lines. Plaintiff is therefore prohibited from relying on Underwood's declaration now in order to create a genuine issue of material fact.

Thus, the court concludes that the company's policy was not applied differently to plaintiff and, therefore, that his claim of disparate treatment must fail. As to defendant's knowledge, no other employee has ever struck power lines as many as three times, particularly after being disciplined for two prior violations of the policy. And of course, plaintiff even further distinguished himself by admitting that he had

hit power lines on as many as ten occasions. While plaintiff argues that this admission during the appeal meeting is irrelevant because it was not made until after the termination, defendant points out that the decision was not finalized until after that meeting. The purpose of such a meeting was to review the decision and allow plaintiff the opportunity to appeal the initial determination. Plaintiff's replacement did not assume his position until well after the meeting took place. In any event, the court finds that plaintiff was not punished more harshly than others under the particular circumstances of this case.

■ Finally, plaintiff offers the deposition testimony of a former employee to the effect that defendant's administrative manager referred to plaintiff as "that old fart" or "that old son of a bitch" during a conversation over insurance. Yet the employee admitted that he had referred to plaintiff as an "old fart" as a "term of affection." In addition, this individual had nothing to do with the decision to discharge plaintiff. Plaintiff also refers to a statement made four years ago by the company's president ("he oughtta run that sucker off"). However that statement did not mention anything regarding age and is presented without any evidence of context or background. In any event, it has been held that a single spoken statement referring to age, standing alone, does not demonstrate an intent to discriminate, and isolated comments are not sufficient to show discriminatory animus in termination decisions. *Leichihman v. Pickwick International*, 814 F.2d 1263 (8th Cir.1987); *Morales v. Dain, et al.*, 467 F.Supp. 1031 (D.Minn.1979).

Such isolated comments referring to age have been held to be irrelevant to the issue of whether an employee was discharged due to age, and inadmissible because their tendency to prejudice the jury outweighed their probative value. *Haskell v. Kaman Corp.*, 743 F.2d 113 (2nd Cir.1984). This court has acknowledged this fact itself in granting summary judgment in the case of *Rodriquez v. Tom's Foods Incorporated*, U.S.D.C. (E.D.Cal.), No. CV–F–87–103 REC

(decision filed October 5, 1987) ("... this single, rather innocuous, statement made years prior to plaintiff's termination cannot constitute specific facts raising an inference that the reason for termination is a pretext. *See Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1050 (9th Cir.1987)."). This is especially true where no causal link is demonstrated between those statements and the attitudes and values of the managers who actually made the termination decision. *White v. University of Massachusetts*, 26 F.E.P.C. 1672, 1981 WL 323 (D.Mass.1981).

The only remaining argument made by plaintiff in opposition to this motion is that pretext can be shown indirectly by establishing that defendant's proferred explanation for the discharge is not supported by the evidence. While plaintiff does not dispute that he had hit power lines on at least three occasions which were known to defendant, he states in his Opposition that he was only disciplined for one of the two prior incidents. He contends that while he was suspended in 1983, he was not disciplined for the 1986 incident. Therefore, he argues that the factual basis upon which defendant made its decision to terminate plaintiff was faulty, since he had only been disciplined once before.

However, the court finds that plaintiff is again simply making a last-ditch effort to create an issue of fact. While plaintiff alleges that he was not disciplined for one of the incidents, defendant points out and the record reflects that plaintiff in fact did admit, in his Response to Request for Admissions No. 2, that he was verbally reprimanded for one of the incidents in addition to being suspended for the other. Plaintiff apparently is indirectly arguing that because he was given no substantive discipline, that he was not disciplined. However a verbal reprimand is a form of discipline, albeit a more lenient one. Plaintiff was expressly warned at the time of his prior suspension that he would be fired if he hit another power line. In addition, he has admittedly hit over ten power lines during the course of his employment. Clearly, defendant's action in terminating plaintiff was for a legitimate and nondis-

criminatory reason, plaintiff's poor job performance.

In conclusion, then, the court finds that plaintiff has failed to carry his initial burden of establishing a prima facie case of age discrimination, since there is neither direct evidence nor any inference that age was a factor in the decision to terminate plaintiff. In addition, he has clearly failed to meet defendant's job expectations due to his poor work performance. Thus, plaintiff has failed to prove that defendant's legitimate business reasons for making the termination decision were in any manner pretextual or discriminatory. In fact, plaintiff admitted in his deposition that no one at the company ever said anything to him which would lead him to believe that he was terminated on the basis of his age. No facts have been shown otherwise which would give rise to an inference of discriminatory conduct. Therefore, plaintiff has failed to present any genuine issue of material fact as to his age discrimination claims.

ACCORDINGLY, IT IS ORDERED that defendant's Motion for Summary Judgment is granted.