924 F.2d 1059
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clyde M. SMITH, Plaintiff-Appellant,
v.
TENNESSEE VALLEY AUTHORITY, Defendant-Appellee.
 No. 90-5396.
 United States Court of Appeals, Sixth Circuit.
 Feb. 4, 1991.
 
 Before RYAN and ALAN E. NORRIS, Circuit Judges, and JOINER, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Clyde Smith appeals the district court's decision finding that his former employer, the Tennessee Valley Authority ("TVA"), did not violate the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sec. 633a, when it terminated him pursuant to a reduction in force. We are asked to decide:
 
 
 2
 --Whether the district court clearly erred in ruling that the TVA did not discriminate against Smith based on his age under the theory of disparate treatment; and
 
 
 3
 --Whether the district court clearly erred in ruling that the TVA did not discriminate against Smith based on his age under the theory of disparate impact.
 
 
 4
 We conclude that the district court correctly decided all of these matters and that its judgment should, therefore, be affirmed.
 
 I.
 
 5
 Plaintiff-appellant Smith worked as an M-4[1] General Steamfitter Foreman in TVA's Division of Power Engineering and Construction ("PE & C"), Construction Services Group ("CSG"). He began working for TVA in 1969 and was promoted to line management in 1977. He was sixty-one years old when TVA terminated him in 1988.
 
 
 6
 In May 1988, economic necessity forced TVA to order a reduction in force ("RIF") of 7,000. As part of the RIF, the CSG and all of its positions would be eliminated; its functions, plus those of PE & C's Engineering Group, would be assumed by a new organization, Fossil and Hydro Construction ("FHC"). FHC would employ far fewer workers: twenty-one managers as opposed to the fifty-six employed by the Power Construction organization. The new FHC would require four Regional Construction Managers ("RCMs") and twelve Area Construction Superintendents ("ACSs") who reported to the RCMS. TVA labelled the RCM positions as M-7 and the ACS positions as M-5 or M-6, depending on the complexity of the jobs involved. Decisions about who would receive the new management jobs were determined by the head of FHC, Daniel Cowser; Lawrence Chapman (M-7), CSG General Construction Superintendent and newly appointed RCM; and Ronald Haynes (M-6), an Assistant General Construction Superintendent of CSG who was also named an RCM.
 
 
 7
 Cowser, Chapman, and Haynes believed that the duties of the new ACS positions differed from those of the foremen. The ACS position required more accountability for results and the ability to manage larger projects with less staff. ACSs also had greater responsibility for scheduling, budgeting, engineering, labor relations, administration, and paperwork. In staffing these positions, Cowser, Chapman, and Haynes sought flexible employees who could adapt to change. Chapman and Haynes, who had been Smith's supervisors in the years preceding the RIF, did not recommend him for this position because they believed he was unable to adapt to change and needed too much staff assistance, which would no longer be available. They also believed that other general foremen had more education and specialized expertise which would be lost to the organization if they were not selected. Smith's expertise, steamfitting, was already accounted for by Haynes' background in this type of work.
 
 
 8
 In addition to the reorganization, the RIF also encompassed a voluntary reduction component. In June 1988, TVA sent a notice to employees explaining the voluntary RIF program, which included double severance pay, and the reorganization which would result in only sixteen line management positions in FHC.
 
 
 9
 After receiving the information packet, Smith met with Haynes who informed him that he had not been selected for a FHC position and thus would be unemployed after the RIF. Smith later called Haynes at home and asked Haynes for advice. Haynes told him that if he were in Smith's position, approaching retirement and about to be terminated, he would volunteer for the RIF and retire. Smith volunteered for the RIF on July 13. TVA accepted his decision on July 27, and his last day of work was on August 1, 1988 when all of the slots were filled.
 
 
 10
 In the middle of October 1988, Smith discovered that TVA had retained other M-4 General Foremen who were younger than he and less experienced. TVA had retained ten of the twenty-one General Construction Foremen and promoted the six M-4s to a pay grade of M-5. Smith was surprised about these retentions because his performance evaluations for the previous five years, graded on a scale of excellent, superior, proficient, acceptable or unsatisfactory, included two superiors and three proficients. Only one of the six retained M-4 foremen had more superior ratings than Smith did. Smith also had worked for TVA longer than all but one of the six retained foremen.
 
 
 11
 Consequently, on March 8, Smith filed a formal administrative complaint with the Equal Employment Opportunity Commission ("EEOC"). TVA rejected this claim as untimely on March 31, 1989. Smith filed this action in district court on April 27, 1989.
 
 
 12
 The court entered a memorandum opinion and judgment in favor of TVA, finding that although Smith made a prima facie case of age discrimination by showing that TVA retained foremen aged 29, 39, 42, 42, 49, and 52, and terminated foremen aged 41, 45, 59, 51, 53, 53, 58, and 61, Smith did not meet his burden rebutting TVA's explanation that age was not a factor in the selection process.
 
 II.
 
 13
 Under the ADEA, it is unlawful for any employer to discharge an individual "because of such individual's age." 29 U.S.C. Sec. 623(a)(1). Claims under the ADEA may be brought under either a disparate treatment or disparate impact theory. Whether the ADEA has been violated under either theory is reviewed on appeal for clear error. Pullman-Standard v. Swint, 456 U.S. 273, 290 (1982); Antonio v. Wards Cove Packing Co., Inc., 827 F.2d 439, 443 (9th Cir.1987), rev'd on other grounds, 109 S.Ct. 2115 (1989). Thus, a reviewing court must affirm the district court's decision in ADEA cases unless it is "left with the definitive and firm conviction that a mistake has been committed." See United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 A. Disparate Treatment
 
 14
 A plaintiff establishes a prima facie case of intentional age discrimination when he shows that he was a member of the protected class, 40-70 year olds; he was discharged; he was qualified for the position; and he was replaced by a younger person. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). When a plaintiff proves that age played a motivating role in the termination, the employer may avoid liability only by proving by a preponderance of the evidence that it would have reached the same decision without taking account of the plaintiff's age. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the termination. McDonnell Douglas, 411 U.S. at 804. Finally, the burden of production shifts back to the employee to show that these reasons are pretextual. Id. Although the burden of production shifts throughout the process, the burden of persuasion remains with the plaintiff at all times. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981).
 
 
 15
 In establishing a prima facie case, an ADEA plaintiff terminated during an RIF carries "a greater burden of supporting charges of discrimination than an employee who was not terminated for similar reasons." Ridenour v. Lawson Co., 791 F.2d 52, 57 (6th Cir.1986). In addition to showing the usual requirements of an age discrimination suit, an employee discharged during an RIF "must come forward with additional direct, circumstantial, or statistical evidence that age was a determining factor in his termination." Id. The failure to retain a competent older employee when economic necessity requires a reduction in force will not establish age discrimination. LaGrant v. Gulf & Western Mfg. Co., Inc., 748 F.2d 1087, 1090-91 (6th Cir.1984). This is especially true when, as here, the plaintiff presents no evidence that management favored younger workers, tended to fire older workers, or expressed disfavor toward older workers. Id. at 1091.
 
 
 16
 Even if Smith established a prima facie case, he did not refute TVA's claim that age was not a factor. A plaintiff can challenge the credibility of the defendant's business justification in three ways: by showing that the reasons had no basis in fact; by showing that they were not the actual factors behind the discharge; or by showing that they were insufficient to motivate the discharge. Chappell v. GTE Prod. Corp., 803 F.2d 261, 266 (6th Cir.1986), cert. denied, 480 U.S. 919 (1987). The plaintiff may not, however, focus on the soundness of an employer's business judgment. Id. In the present case, Smith's argument focuses not on the means actually used to make the decision but on the means not used: he challenges the employer's business judgment. Predicting capabilities in a new position is a subjective task but nevertheless a proper consideration. See Fowle v. C & C Cola Co., 868 F.2d 59, 67 (3rd Cir.1989).
 
 
 17
 Smith correctly points out that those hired as ACSs are younger, as a group, than those terminated. All but two of the foremen, however, were within the protected class, forty to seventy year olds. Moreover, "[t]he isolated fact that a younger person replaces an older employee is not enough to permit a rebuttal inference that the replacement was motivated by age discrimination." Chappell, 803 F.2d at 267. Based on these inadequacies in Smith's argument, we do not believe the district court clearly erred in ruling that he did not prove age discrimination.
 
 B. Disparate Impact
 
 18
 Disparate impact results from "facially neutral" employment practices which "fall more harshly on one particular group and cannot be justified by business necessity." Lowe v. Commack Union Free School Dist., 886 F.2d 1364, 1370 (2d Cir.1989), cert. denied, 110 S.Ct. 1470 (1990). To meet his burden in such cases, a plaintiff must show more than statistical disparities in the work force: the plaintiff must show specific employment practices responsible for the disparities and statistical evidence which illustrates that the disputed practice caused the exclusion of job applicants in the protected class. Wards Cove Packing Co., Inc. v. Antonio, 490 U.S. ---, 109 S.Ct. 2115, 2124-25 (1989) (citing Watson v. Fort Worth Bank and Trust, 487 U.S. 977 (1988)). Once the plaintiff meets this burden, the employer carries the burden of producing evidence of a business justification for his employment practice; the plaintiff, however, retains the burden of persuasion. Wards Cove Packing Co., 109 S.Ct. at 2126. Even when an employer shows a legitimate business necessity for the practice, the plaintiff may still prevail if he can show that other tests or selection devices would achieve the employer's objective without the discriminatory effect. Id. at 2126-27. Plaintiffs thus must show that the test is simply a pretext for discrimination. Id.
 
 
 19
 Smith contends that TVA's hiring practice had a discriminatory impact because those selected as ACSs were younger than those terminated. TVA argues that under a disparate impact theory, the comparison must be between protected and unprotected class members and that because over 83% of the RCM and ACS selectees were within the protected class, no discrimination occurred. Moreover, TVA argues, Smith failed to show that no legitimate basis for these decisions existed. The district court made no express findings regarding this theory.
 
 
 20
 Statistics may be used to establish a prima facie case of discrimination under the disparate impact theory but these statistics must indicate a "significantly adverse" impact which cannot be explained by business necessity. Palmer v. United States, 794 F.2d 534, 538 (9th Cir.1986). Thus, to meet his burden, Smith would have to produce statistics to show that a particular selection practice resulted in the hiring of a larger share of workers under the age of forty than over the age of forty. Lowe, 886 F.2d at 1371. In this case, the employees appointed as ACSs were younger than those terminated, but because ten out of the twelve foremen were within the protected range, protected employees would necessarily be terminated. The fact that all six terminated employees were within the protected range does not support a finding of disparate impact when four of the six retained employees as ACSs were also within the protected age group. A plaintiff cannot succeed under a disparate impact theory by showing that younger members of the protected class were preferred over older members of the protected class. Lowe, 886 F.2d at 1373.
 
 III.
 
 21
 For the foregoing reasons, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior District Judge of the United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 TVA classified management and specialist positions by a pay schedule ranging from M-1 (the lowest) to M-13 (the highest)