74 F.3d 1248
 67 Empl. Prac. Dec. P 43,850
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James A. BAKER, Plaintiff-Appellant,
v.
OGDEN SERVICES CORP.; Ogden Plant Maintenance Co., Inc.,
Defendants-Appellees.
 No. 94-6031.
(D.C.No. CIV-92-2207-R)
 United States Court of Appeals, Tenth Circuit.
 Jan. 16, 1996.
 
 Before HENRY, SETH and BRISCOE, Circuit Judges.
 ORDER AND JUDGMENT[1]
 HENRY, Circuit Judge.
 
 
 1
 Plaintiff James A. Baker appeals the order of the district court granting summary judgment to defendants Ogden Services Corp. and Ogden Plant Maintenance Co., Inc. on his claims brought under the Age Discrimination in Employment Act, 29 U.S.C. 621-634, and under Oklahoma tort law. We exercise jurisdiction pursuant to 28 U.S.C. 1291. On appeal, Mr. Baker argues that the district court erred in concluding that the actions of the defendants and of nonparty Atlantic Projects were not attributable to each other for purposes of his claims. We decline to reach this issue, however, and affirm the district court's order based on Mr. Baker's failure to meet the prerequisite for bringing his age discrimination case and on the district court's alternate ground that Mr. Baker failed to present sufficient evidence from which a reasonable factfinder could find that he was the victim of age discrimination.
 
 I. BACKGROUND
 
 2
 The Dayton Tire Company (Dayton) and its predecessor, the Firestone Tire and Rubber Company (Firestone), have operated a manufacturing plant (the Dayton Plant) in Oklahoma City, Oklahoma for over twenty years. Dayton and Firestone contracted with defendant Ogden Plant Maintenance Co., Inc. (Ogden) for Ogden to perform maintenance work on certain machinery and equipment at the Dayton Plant. Until his discharge on January 1, 1992, Mr. Baker had worked for Ogden for over thirteen years, rising to the position of supervisor.[2] Mr. Baker was fifty-two years old at the time of his discharge. In his amended complaint, Mr. Baker alleged that the defendants had discharged him in violation of the ADEA.
 
 
 3
 In their motion for summary judgment, the defendants argued that Mr. Baker's discharge was the result of a company-wide reduction in force. They asserted that in 1990, Dayton had informed James Fry, the defendants' site manager at the Dayton plant, that the defendants' workforce would have to be reorganized in order to cut costs. As part of this cost reduction, the defendants determined that labor costs could be cut by eliminating all of the salaried supervisor positions, including the position held by Mr. Baker.
 
 
 4
 In addition to cutting the work force of the defendants' operation within the Dayton plant, Dayton also decided that maintenance costs could be reduced by contracting out some of the work then performed by the defendants to outside contractors on a job-by-job basis.[3] In order to avoid losing their previously-captured business, the defendants' parent corporation, Ogden Corporation, formed a new entity, ultimately known as Atlantic Projects (Atlantic), for the purpose of bidding on certain work at the plant.[4]
 
 
 5
 It is undisputed that, when informed of the contemplated changes, Mr. Baker told Mr. Fry on at least two occasions that he thought the company was going in the wrong direction and that the plan was doomed to fail. See Aplt's App. vol. I, at 72-74, 92, 96. He also at one point asked Mr. Fry to fire him. Id. at 83. Mr. Baker's immediate supervisor testified by deposition that Mr. Baker increasingly isolated himself from the salaried personnel after the changes were announced, and that, although he was given a substandard evaluation, he was also given a chance to remedy matters. No substandard evaluation appeared in Mr. Baker's personnel file. Mr. Baker acknowledged that he had been counseled by his supervisor because of the increasing perception that he was not a "team player."
 
 
 6
 The supervisors at the Dayton Plant were salaried, nonunion personnel. From 1990 through 1992, thirteen supervisors were terminated; six of those terminated were under the age of forty; seven, including Mr. Baker, were forty or over.[5] Of the younger-than-forty group, five of six were hired by Atlantic; of the forty-and-over group, only one was hired by Atlantic.[6] In support of his Brief in Opposition to Motion for Summary Judgment of Defendants, Mr. Baker presented the affidavit testimony of Dr. David Huettner, Chairman of the Department of Economics at the University of Oklahoma, who performed a statistical analysis called the Fisher Exact Probability Test on the above data. Dr. Huettner concluded that there was a 2.45% probability that the ages of supervisors terminated by the defendants and rehired by Atlantic would be distributed as described above on the basis of random factors alone.[7]
 
 
 7
 Significantly, Mr. Baker never applied for a job with Atlantic, and he has not named Atlantic as a defendant. He stated in his deposition that he did not apply "because in the meetings with James Fry, the impression was--I assume the impression, that the way things were going, Mr. Fry was the one responsible for seeing who moved to Atlantic." Aplt's App. vol. I, at 302.
 
 
 8
 The district court granted the defendants' motion for summary judgment, holding that Mr. Baker "failed to adduce evidence from which a factfinder could find that the Defendants or either of them discriminated against Plaintiff on the basis of his age." Aplt's App. vol. II, at 669. The district court viewed Mr. Baker's statistical evidence as irrelevant because Mr. Baker failed to show that the hiring actions of nonparty Atlantic could be attributed to the defendants. Further, the court noted that, even if the defendants could be considered entities related to Atlantic for purposes of liability, Mr. Baker's statistics alone were insufficient evidence of discrimination because they were unreliable in that they did not rule out possible nondiscriminatory reasons for the employment decisions and were drawn from a small sample size.
 
 II. DISCUSSION
 A. Standard of Review
 
 9
 We review the district court's grant of summary judgment de novo. Jones v. Unisys Corp., 54 F.3d 624, 627 (10th Cir.1995). Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the evidence in the light most favorable to the party opposing summary judgment. Jones, 54 F.3d at 628; Frank v. U.S. West, Inc., 3 F.3d 1357, 1361 (10th Cir.1993). "The opposing party, however, must identify sufficient evidence to require submission of the case to a jury. We affirm the district court's decision to grant summary judgment if the record contains any basis to do so." Jones, 54 F.3d at 628 (citations omitted).
 
 
 10
 B. Failure to Establish an Age Discrimination Case
 
 
 11
 We need not address the district court's finding that the inability to attribute the hiring actions of nonparty Atlantic to the defendants rendered Mr. Baker's statistical evidence irrelevant; even if the defendants could be considered entities related to Atlantic for purposes of liability, Mr. Baker's action fails for two reasons. First, his failure to apply for a position with Atlantic or to be "in the group who might reasonably be interested in" being hired by Atlantic, see Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251 (10th Cir.1992), cert. denied, 113 S.Ct. 1417 (1993), prohibit him from challenging as discriminatory Atlantic's decision not to hire him. Second, Mr. Baker's statistical evidence alone is insufficient to resist the defendants' motion for summary judgment. See MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir.1991) (for plaintiff to resist summary judgment, court must find that evidence could persuade reasonable jury that employer had discriminated against plaintiff).
 
 1. Failure to Apply for a Position
 
 12
 Mr. Baker's age discrimination claim is based on the defendants firing him and Atlantic not rehiring him. Therefore, as a prerequisite to establishing his age discrimination case, Mr. Baker must show that he either applied for a position with Atlantic or was "in the group of people who might reasonably be interest in" being hired by Atlantic. See Whalen, 974 F.2d at 1251 (employment discrimination law requires that where formal hiring procedures are used, the employer be on specific notice that the plaintiff seeks employment, and where informal hiring procedures are used, the plaintiff be in the group of people who might reasonably be interested in the particular job); see also Jones, 54 F.3d at 631 n. 8 (prohibiting plaintiffs from challenging as discriminatory the decision to fill positions they did not seek); Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1427 (10th Cir.1993) (requiring ADEA plaintiff to prove that she applied for an available position for which she was qualified). Mr. Baker himself admitted that he did not apply for a position with Atlantic; further, he removed himself from "the group of people who might reasonably be interested in" jobs with Atlantic by asking to be laid off and by repeatedly expressing his view that the reorganization would fail.[8] To the extent that Mr. Baker's age discrimination claim is based on Atlantic not hiring him, his failure to apply for a job with Atlantic and his expressed disapproval of the workforce reorganization prevent him from bringing this claim. See Jones, 54 F.3d at 631 n. 8; Faulkner, 3 F.3d at 1427; Whalen, 974 F.2d at 1251.
 
 
 13
 2. Failure to Show Intentional Discrimination
 
 
 14
 i. McDonnell Douglas Analysis
 
 
 15
 Even if Mr. Baker had applied for a position with Atlantic or had been within the group who might reasonably be interested in being hired by Atlantic, the defendants would still be entitled to summary judgment because Mr. Baker has not shown that the defendants intentionally discriminated against him in firing him. The ADEA prohibits an employer from basing its discharge of an employee on the employee's age. See 29 U.S.C. 623(a)(1). When a plaintiff brings a disparate treatment age discrimination case[9] under the ADEA, if he, like Mr. Baker, has no direct evidence of discrimination, he must indirectly show discrimination through the three-stage analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). E.g., Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 529 (10th Cir.1994); MacDonald, 941 F.2d at 1119; Lucas v. Dover Corp., 857 F.2d 1397, 1400 (10th Cir.1988). The first stage of this analysis requires the plaintiff to "prove a prima facie case of discrimination." Cone, 14 F.3d at 529. To do this, he must show that he was "(1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person." Jones, 54 F.3d at 630; see also Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir.1988).
 
 
 16
 In cases where the employer is reducing its workforce, as were the defendants here, "because a plaintiff is not always replaced with another employee, ... a plaintiff may demonstrate the fourth element by producing evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.' " Jones, 54 F.3d at 630 (quoting Branson, 853 F.2d at 771).[10] He may show this "through circumstantial evidence that [he] was treated less favorably than younger employees during the reduction-in-force." Branson, 853 F.3d at 771; see also Jones, 54 F.3d at 630; Rea v. Martin Marietta Corp., 29 F.3d 1450, 1454 (10th Cir.1994).[11]
 
 
 17
 The plaintiff's establishment of a prima facie case creates a presumption of discrimination, which, at the second stage of the McDonnell Douglas inquiry, causes the burden of production to shift to the defendant to show a "legitimate, nondiscriminatory reason' for the decision." Jones, 54 F.3d at 630 (quoting EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir.1992)); see also 29 U.S.C. 623(f)(3) (allowing discharge of employee "for good cause"). If the defendant succeeds in showing a nondiscriminatory reason for its actions, "the presumption of discrimination established by the prima facie showing simply drops out of the picture.' " Ingels v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir.1994) (quoting St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742, 2749 (1993)).
 
 
 18
 The third stage of the McDonnell Douglas analysis requires the plaintiff to offer evidence creating a "reasonable inference," Cone, 14 F.3d at 530, "that age was a determining factor in the challenged decision by either showing that the defendant's proffered reasons were really a pretext for age discrimination or by producing direct evidence of age discrimination." Jones, 54 F.3d at 630; see also Faulkner, 3 F.3d at 1425 (plaintiff retains ultimate burden of proving he was victim of intentional discrimination). The plaintiff need only show that age was one of the motivating factors, not the sole motivating factor, for the employer's actions. Spulak v. K Mart Corp., 894 F.2d 1150, 1155 (10th Cir.1990). If the plaintiff succeeds in this showing on the defendants' motion for summary judgment, the court must deny the defendants' motion. Id.
 
 
 19
 ii. Use of Statistical Evidence
 
 
 20
 In this case, Mr. Baker's only evidence of discrimination is the affidavit testimony of Dr. Huettner that there was a 2.45% probability that the ages of supervisors terminated by the defendants and rehired by Atlantic would be distributed as they were on the basis of random factors alone. A plaintiff in an ADEA disparate treatment case may use statistical evidence alone to establish a prima facie case of age discrimination. Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1424 (10th Cir.1991). The statistical analysis must compare similarly situated individuals, e.g., Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 620-21 (1974); Cone, 14 F.3d at 532; Simpson v. Midland-Ross Corp., 823 F.2d 937, 943 (6th Cir.1987), and it must be drawn from an adequate sample size, International Brotherhood of Teamsters v. United States, 431 U.S. 324, 340 n. 20 (1977) (small sample size lessens value of statistical evidence).[12] The danger in relying on small sample sizes is simply this: "[T]he smaller the sample size, the greater the likelihood that the underrepresentation reflects chance rather than discriminatory practices.' " Stendebach v. CPC Int'l, Inc., 691 F.2d 735, 738 (5th Cir.1982) (quoting Williams v. Tallahassee Motors, Inc., 607 F.2d 689, 693 (5th Cir.1979) cert. denied, 449 U.S. 858 (1980)); see also Parker v. Federal Nat'l Mortgage Ass'n, 741 F.2d 975, 980 (7th Cir.1984) (affirming district court's grant of defendant's motion for summary judgment on plaintiff's ADEA claim and finding that a small sample size causes "[a] small change in the underlying raw data [to] result in dramatic statistical fluctuations."). Where the plaintiff relies solely on statistical evidence, he "must show gross statistical disparities.' " Denison, 941 F.2d at 1424 (quoting Hazelwood Sch. Dist. v. United States, 433 U.S. 299, 307-08 (1977)); see also Cone, 14 F.3d at 532 (affirming the district court's grant of summary judgment to the defendant on the plaintiff's ADEA claim and finding the plaintiff's statistics invalid because they did not "demonstrate a significant disparity in the treatment of younger workers"); MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1058 (8th Cir.1988) (explaining that when the plaintiff's only proof of discrimination is a statistical analysis, the inference of discrimination must be more certain than when plaintiff has other evidence of discrimination); Mathews v. Allis-Chalmers, 769 F.2d 1215, 1218 (7th Cir.1985) (affirming district court's grant of summary judgment to the defendant on the plaintiff's ADEA claim and finding that statistics in age discrimination cases are not of significance unless they show large disparities in treatment).[13]
 
 
 21
 We assume, without deciding, that Mr. Baker's statistical evidence is sufficient to establish a prima facie case of age discrimination under the first stage of the McDonnell Douglas analysis. See Lucas, 857 F.2d at 1401 n. 8 (for purposes of appeal, court assumed plaintiffs established their prima facie case); see also Cone, 14 F.3d at 530 & n. 2 (assuming plaintiff met prima facie case and noting that "the elements of [a] prima facie discrimination case are flexible and are not to be applied rigidly"); Branson, 853 F.2d at 771 ("While reduction-in-force cases present exigencies not present in other employment discrimination cases, these exigencies are best analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the discharge."); Birkbeck, 30 F.3d at 511 (noting that appellate courts should not "immerse themselves in the minutiae of the various proof schemes set forth in McDonnell Douglas "); Coburn v. Pan Amer. World Airways, Inc., 711 F.2d 339, 343 (D.C.Cir.) ("[T]he exigencies of a reduction-in-force can best be analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the firing."), cert. denied, 464 U.S. 994 (1983). Nevertheless, a plaintiff who succeeds in establishing a prima facie case survives a motion for summary judgment only if the court finds that "the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.' " MacDonald, 941 F.2d at 1121 (quoting Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1570 (7th Cir.1989)). Mr. Baker has failed to show the court that he is prepared to present evidence at trial that would persuade a reasonable jury that the defendants discriminated against him based on his age.
 
 
 22
 The defendants presented "legitimate, nondiscriminatory reason[s]' for the decision" to fire Mr. Baker, see Jones, 54 F.3d at 630 (quoting EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir.1992)), by offering evidence that they were reducing their workforce in order to reduce costs, that Mr. Baker was not supportive of this decision, and that Mr. Baker in fact asked to be fired. The burden then shifted to Mr. Baker to show that these reasons were a pretext for the defendants' true discriminatory motive in firing him. Although an ADEA plaintiff may establish pretext with statistical evidence, see Denison, 941 F.2d at 1424, Mr. Baker's statistical evidence fails to do so; the showing necessary at the third stage of the McDonnell Douglas analysis is much greater than that required to establish a prima facie case.
 
 
 23
 Mr. Baker's statistical evidence fails to discredit the defendants' nondiscriminatory explanations for his layoff for two reasons. First, the statistical analysis is derived from a small sample, thirteen fired supervisors, which causes us to evaluate it with caution, as the previously cited cases require. See supra note 11. We are mindful of the difficulty that ADEA plaintiffs, such as Mr. Baker, face in proving they were discriminated against when their only evidence is statistical and when their statistics are necessarily drawn from a small sample due to the small number of employees in their employer's workforce. However, we do not discard Mr. Baker's statistics due to their small sample size alone; they also lack probative value because Mr. Baker has failed to demonstrate that his statistics compare individuals who were similarly situated.
 
 
 24
 To show that his statistics compared similarly situated individuals, Mr. Baker had to show that the following factors were similar for both the over-forty group and the forty-and-under group that his statistics compared: their qualifications, their performance evaluations, and their willingness to try to make the reorganization of the defendants' workforce succeed. The statistically analyzed employees also must have had the same status regarding whether or not they applied for a position with Atlantic or were "in the group of people who might reasonably be interested in" being hired by Atlantic. See Whalen, 974 F.2d at 1251.
 
 
 25
 Mr. Baker has not demonstrated the above factors, meaning he has not shown that his statistics compare similarly situated individuals; accordingly, Mr. Baker's statistical evidence does not create a reasonable inference that age was a motivating factor in his termination. The personnel records of the individuals hired by Atlantic are not in the record on appeal, and there is no indication that Mr. Baker or his expert, Dr. Huettner, had access to that information before compiling the statistics. Cf. Fed. R.App. P. 10(b)(2) (requiring appellant to include in the record a transcript of all evidence relevant to the finding that he or she argues on appeal was unsupported by the evidence); Rios v. Bigler, 67 F.3d 1543, 1553 (10th Cir.1995) (appellant has responsibility to provide court with proper record on appeal). Thus, Dr. Huettner could not have compared the qualifications of members of the over-forty group with those of the forty-and-under group. Also, there is no evidence that the under-forty employees hired by Atlantic had performance evaluations equal to or lower than those of the forty-and-over employees whom Atlantic did not hire. Nor is there evidence that those hired by Atlantic did not have more positive attitudes about the workability of the defendants' workforce reorganization than did members of the over-forty group. Finally, there is no evidence that all those in the statistical analysis had the same status regarding whether or not they had applied for a position with Atlantic or were "in the group of people who might reasonably be interested in" jobs with Atlantic. See Whalen, 974 F.2d at 1251.
 
 
 26
 Therefore, "[a]lthough summary judgment is not ordinarily appropriate for settling issues of intent or motivation," Cone, 14 F.3d at 530, we hold that Mr. Baker's evidence fails to create a reasonable inference that age was a determining factor in the defendants' decision to fire him; Mr. Baker has failed to offer evidence tending to discredit the defendants' nondiscriminatory explanations of his termination. "This court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives." Lucas, 857 F.2d at 1403-04; see also Faulkner, 3 F.3d at 1426 ("The ADEA is not a vehicle for reviewing the propriety of business decisions."); Birkbeck, 30 F.3d at 509 (holding that firing of ADEA plaintiff was "a legitimate response to difficult economic circumstances"); Branson, 853 F.2d at 772 (courts not free to second-guess employer's business judgment); Mathews, 769 F.2d at 1218 ("[t]he ADEA was not intended as a vehicle for judicial review of business decisions.' " (quoting Kephart, 630 F.2d at 1223)). The district court's grant of summary judgment to the defendants on Mr. Bakers' ADEA claim was therefore proper.
 
 
 27
 Mr. Baker's claim for wrongful discharge based on Oklahoma tort law fails for one of the same reasons that his ADEA claim failed: the evidence he produced does not create a reasonable inference of age discrimination. In Tate v. Browning-Ferris, Inc., 833 P.2d 1218 (Okla.1992), the Oklahoma Supreme Court recognized that an employee fired based on his race may bring a tort claim because such a discharge violates public policy against race discrimination as expressed by the Oklahoma Statutes, see Okla. Stat. tit. 25, 1302(A)(1), and by federal law. See Tate, 833 P.2d at 1220.[14] Similarly, an employee fired based on his age may bring a tort claim because such a discharge violates public policy against age discrimination in employment as expressed by the Oklahoma Statutes, see Okla. Stat. tit. 25, 1302(A)(1), and by the ADEA. However, Mr. Baker's evidence fails to support this tort claim. Further, to the extent that Mr. Baker is attempting to assert a claim against the defendants for failure to hire or rehire him, that claim fails because Oklahoma law has not created, as an exception to Oklahoma's employment-at-will doctrine, a public-policy-based tort claim for failure to hire. See Sanchez v. Phillip Morris, Inc., 992 F.2d 244, 249 (10th Cir.1993); Williams v. Dub Ross Co., 895 P.2d 1344, 1347 (Okla.Ct.App.1995). Therefore, the district court's grant of the defendants' motion for summary judgment on Mr. Baker's Oklahoma tort law claim was proper.
 
 
 28
 For these reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendants.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 In his original complaint, Mr. Baker named Ogden Services Corp. as his employer; after Ogden Services Corp., in its answer, asserted that Ogden Plant Maintenance Co., Inc. was instead Mr. Baker's employer, Mr. Baker filed an amended complaint naming Ogden Plant Maintenance Co., Inc. as an additional defendant-employer. For purposes of this appeal, it is unnecessary to resolve this issue
 
 
 [3]
 Although there is no explanation in the record, the defendants state in their brief on appeal that since the reorganization, "Ogden does not and cannot bid on work at the Dayton plant." Aplee's Br. at 4
 
 
 [4]
 Although the district court stated that Atlantic was incorporated in 1969, we can find no support for that statement in the record. The defendants state in their brief on appeal that Atlantic was "a new entity ... created to bid on certain work at the plant." Aplee's Br. at 3. Construing all inferences in favor of Mr. Baker, we will assume that Atlantic was created in direct response to Dayton's reorganization
 
 
 [5]
 Of the nineteen salaried persons terminated by the defendants, some of whom were not supervisors, seven were under forty, and twelve were forty or older
 
 
 [6]
 Although the defendants claim that Mr. Fry "made the ultimate decisions of who would go and who would stay," Aplt's App. vol. I, at 23, as a result of the workforce reorganization, the record is unclear on what procedure was used to determine which employees the defendants would retain. The record is also unclear regarding Atlantic's hiring procedures; although the defendants claim that Atlantic independently hired the employees fired by the defendants, Mr. Fry testified in his deposition that he had some involvement in Atlantic hiring two of his former employees, see Aplt's App. vol. II, at 520-22
 
 
 [7]
 Of the nineteen salaried personnel terminated, six of the seven individuals under forty were hired by Atlantic, while only four of the twelve individuals over forty were hired by Atlantic. Dr. Huettner concluded that there was a 3.75% probability that the ages of all salaried persons terminated by the defendants and later hired by Atlantic would be distributed this way on the basis of random factors alone
 
 
 [8]
 Mr. Baker claims that he did not apply for a job with Atlantic because he believed that Mr. Fry would not recommend him. Aplt's App. vol. II, at 535. However, in deciding whether or not an employee is qualified for a position with her employer, "[i]t is the perception of the decision maker which is relevant, not [the employee's] perception of herself." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir.1988)
 
 
 [9]
 In a disparate treatment age discrimination case, the plaintiff is alleging that the employer treated him less favorably than others because of his age. Faulkner, 3 F.3d at 1424
 
 
 [10]
 Mr. Baker argues that he was replaced by a younger worker, allowing him to establish a prima facie case under the usual fourth element of an ADEA prima facie case, rather than under the modified, reduction-in-force fourth element. Mr. Baker, however, has produced no evidence that the position occupied by the younger worker was actually the same job he had performed. He fails to rebut the defendants' evidence that the job created after Mr. Baker's layoff was substantially different than the job he had performed; therefore, the evidence indicates that the younger worker did not "replace" Mr. Baker, but instead occupied a position "different" from that held by Mr. Baker. See Aplt's App. vol. I, at 124, 182-83
 
 
 [11]
 "Evidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent and to require the employer to articulate reasons for its decision." Branson, 853 F.3d at 771 (footnote omitted). The plaintiff need not show that "he was as qualified' as the retained workers in order to establish a prima facie case." Id. at 771 n. 6
 
 
 [12]
 It is well established that statistics drawn from small samples are of questionable value in establishing a discrimination case. See, e.g., Educational Equality League, 415 U.S. at 621 (sample size of thirteen causes concern); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511 (4th Cir.) (sample size of four has no probative value) cert. denied, 115 S.Ct. 666 (1994); Lucas, 857 F.2d at 1403 (sample size of eighteen must be evaluated with caution); Pitre v. Western Elec. Co., 843 F.2d 1262, 1267 (10th Cir.1988) (sample sizes can be "too small to produce meaningful results"); Simpson, 823 F.2d at 943 (sample size of seventeen is suspect); Palmer v. United States, 794 F.2d 534, 539 (9th Cir.1986) (sample size of fifteen is too small to have any predictive value and must be disregarded); Stendebach v. CPC Int'l, Inc., 691 F.2d 735, 738 (5th Cir.1982) (must be cautious of statistics drawn from small samples), cert. denied, 461 U.S. 944 (1983). This is true even at the summary judgment stage of proceedings. See Palmer, 794 F.2d at 535 (affirming district court's grant of defendant's motion for summary judgment on plaintiff's ADEA claim)
 
 
 [13]
 In Mathews, the Seventh Circuit noted that the reason for giving little weight to statistical evidence in age discrimination cases is that "discharged employees will naturally more often than not be replaced by those younger than they, for older employees are constantly moving out of the labor market, while younger ones move in.' " Id. at 1218 n. 2 (quoting Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1224 (7th Cir.1980) (affirming district court's grant of defendant's motion for summary judgment on plaintiff's ADEA claim)), cert. denied, 450 U.S. 959 (1981)
 
 
 [14]
 The Oklahoma Supreme Court held that [w]here an at-will employee terminated by a private employer files suit alleging facts that, if true, violate state and federal statutes providing remedies for employment discrimination, ... the employee-plaintiff [can] state a tort cause of action based on the same facts, pursuant to the public policy exception to the at-will termination rule under Oklahoma law. Id. at 1220. The public policy exception to the at-will termination rule under Oklahoma law creates an exception "where the discharge violates public policy mandated by clearly articulated constitutional, statutory or decisional law." Id. at 1225 (footnote omitted)