Ralph James ROMIG, Plaintiff,

v.

CITY OF IOLA, KANSAS, Defendant.

No. 98–2053–JWL.

United States District Court,
D. Kansas.

Dec. 11, 1998.

Robert L. Bezek, Jr., Bezek, Lowry & Hendrix, Ottawa, KS, for Plaintiff.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Ralph James Romig filed suit against defendant City of Iola alleging that the City failed to hire him on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. This matter is presently before the court on defendant's motion for summary judgment (doc. # 29). For the reasons set forth below, defendant's motion is granted and plaintiff's complaint is dismissed in its entirety.

### I. Facts [1]

Plaintiff Ralph James Romig has a long history in the field of law enforcement. He earned both a Bachelor of Science degree

---

**1.** In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

and a master's degree in Administration of Justice and served as Chief of Police for the City of Burlington from May 1982 until July 1993. Plaintiff first completed an application for employment with the City of Iola in May 1993. According to plaintiff, he was interested in both the police dispatcher position and the patrolman position, although he did not know of any openings for these positions at the .time he submitted his application. He simply completed an application for the purposes of getting on the City's applicant list.

Plaintiff next applied for the police patrolman position in September 1993 in response to an opening he had seen advertised. At the time he applied for this position, Jay Thyer was the Chief of Police. Plaintiff did not receive an interview. The City hired Hadi Shaaban, a twenty-two (22) year-old male, to fill the police patrolman position.

Plaintiff was fifty-six (56) years old at the time.[2]

In 1994, Rex Taylor became employed by the City of Iola as the Chief of Police. In February of that year, Chief Taylor met plaintiff when the Emergency 911 committee (of which both Chief Taylor and plaintiff were members) took a trip to Winfield, Kansas to observe Winfield's 911 center. When Chief Taylor was introduced to plaintiff, plaintiff informed Chief Taylor about his background and education. Chief Taylor averred that, at the time, he felt as if plaintiff was interviewing for a job and was "not impressed with his timing." During the trip, Chief Taylor interacted with plaintiff and formed the opinion that plaintiff was very self-absorbed. Later, Chief Taylor asked Sheriff Ron Moore about plaintiff to determine whether he was mistaken in his impres-

---

In that regard, the parties dispute whether certain of defendant's facts should be deemed admitted because plaintiff, in his response to defendant's statement of uncontroverted facts, has simply denied certain factual allegations without explanation and without specific reference to the portions of the record upon which he relies. *See* D. Kan. R. 56.1 ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."). Moreover, although plaintiff has set forth a separate statement of disputed facts, those facts do not appear to specifically controvert the particular facts set forth by defendant that plaintiff denied.

Plaintiff has filed a surreply in which he urges the court that his response adequately complies with the local rules of this court and, moreover, sets forth additional facts in the form of affidavits which, for some unknown reason, were not obtained by plaintiff until after he filed his response to defendant's motion for summary judgment. Defendant has filed a motion to strike plaintiff's surreply (doc. # 37).

There is no provision in the local rules of this court for the filing of surreplies and leave of court was not sought to do so here. Thus, the court need not address the issues raised in plaintiff's surreply. Even if the court were to consider plaintiff's surreply, summary judgment in favor of defendant would nonetheless be appropriate. Regardless of whether plaintiff has strictly complied with the local rules in responding to defendant's statement of facts, the court has reviewed the entire record and determined that no genuine issue of material fact exists with respect to plaintiff's claim of age discrimination. Plaintiff's counsel, however, would be well advised in future cases to refer the court to the specific portions of the record or his own state-

ment of disputed facts in connection with any of the movant's facts he denies.

With respect to the additional affidavits that plaintiff has filed with his surreply, the court similarly concludes that these affidavits have no bearing on the court's disposition of the City's motion. The affidavits call into question the credibility of Detective Gary Garver, one of the individuals with whom Chief Taylor spoke about plaintiff. Chief Taylor testified that Detective Garver told him that plaintiff was not well-liked in the Burlington Police Department and that some members found him difficult to work for. Detective Garver's statements, according to Chief Taylor, played a part in Chief Taylor's decision not to recommend plaintiff for various positions with the City. Plaintiff's additional affidavits, even if true, do not address the relevant inquiry here—whether Chief Taylor believed Detective Garver's assessment of plaintiff's reputation and acted in good faith upon that belief in declining to recommend plaintiff for employment. *See Jacobs v. Delta Air Lines, Inc.*, 156 F.3d 1243, 1998 WL 514620, at *3 (10th Cir. Aug.13, 1998) (challenging the veracity of allegations against plaintiff "avoids the relevant inquiry—i.e., whether Delta believed them, and acted in good faith upon that belief in terminating him").

Thus, the court grants defendant's motion for summary judgment despite the issues raised in plaintiff's surreply. Defendant's motion to strike plaintiff's surreply is denied as moot.

2. Plaintiff apparently applied for the Chief of Police position during the Fall of 1993. Although the City did not hire plaintiff for this position, plaintiff has expressly stated that the City's refusal to hire him for this position is not a part of this lawsuit.

sion of plaintiff and to learn more about him. Sheriff Moore told Chief Taylor that plaintiff had asked to be on the Emergency 911 committee and that Moore had originally turned him down because he was not impressed with plaintiff and felt he would be a hindrance to the process.

In April 1994, Chief Taylor sent a letter to plaintiff informing him that the City's Police Department had an opening for a police patrolman and instructing him to respond in writing if he was still interested in the position. Plaintiff responded to the letter and informed Chief Taylor that he was "still very much interested" in the position. In plaintiff's letter to Chief Taylor, he also stated:

> I also understand the very special concerns you may hold about employing a former Police Chief in a subordinate position. As a Police Chief, I had the same concerns every time I faced similar circumstances. ·Please rest assured, I am well aware of the difficulties that such a situation could easily generate, and if employed by the Iola Police Department I would, at all times, scrupulously seek to avoid any action or comment which might give rise to such problems.

Although Chief Taylor had not expressed these concerns to plaintiff, plaintiff anticipated that it might be an issue and was trying to set Chief Taylor's mind at ease. Sometime thereafter, plaintiff received a letter from the City indicating that another candidate for the position had been hired. Through the discovery process, plaintiff learned that the City hired Glennard Smith, a twenty-nine (29) year-old male, for the position.

After plaintiff had updated his application for employment in April 1994, Chief Taylor made further inquires about plaintiff's background. Specifically, Chief Taylor averred that he spoke with Detective Garver from the City's Police Department. Detective Garver, who knew members of the Burlington Police Department where plaintiff had been Police Chief, told Chief Taylor that plaintiff was not well liked and was generally difficult to work for. According to Chief Taylor, other members of the Iola Police Department also knew

plaintiff and indicated to Chief Taylor that they would not like to work with him. Chief Taylor also visited with members of the Iola City Commission, including Jerry Skidmore and Ray Pershall. According to Chief Taylor's affidavit, Mssrs. Skidmore and Pershall told Chief Taylor that they had been approached by plaintiff when he had applied for the Police Chief position, found him to be unprofessional, and did not like his attitude.

In addition, Chief Taylor visited with two individuals whom plaintiff had identified as personal references—Chuck Apt, Iola's City Attorney, and Steve Smith, Burlington's City Attorney. Chief Taylor testified by affidavit that Mr. Apt advised him that the police department should not hire plaintiff because of his attitude. Mr. Apt also told Chief Taylor, according to Chief Taylor's affidavit, that plaintiff was hard to get along with and would not be an asset to the City or the police department. With respect to his conversation with Mr. Smith, Chief Taylor averred that Mr. Smith believed that plaintiff's only difficulty was that he was not a "people person."

Finally, Chief Taylor contacted Sheriff Brilke of the Woodson County Sheriff's Department, where plaintiff was working as a relief dispatcher, and Sheriff Daily of the Barton County Sheriff's Department. According to Chief Taylor, Sheriff Brilke suggested that plaintiff "was not working out very well." Sheriff Daily indicated to Chief Taylor that plaintiff's brief tenure as Police Chief in Hoisington (located in Barton County) had been stormy and the community felt that plaintiff was difficult to get along with.

According to Chief Taylor, based upon his personal contacts with plaintiff and the information he obtained from other individuals, he believed that plaintiff would not work effectively with others in the department or within the chain of command. Chief Taylor was concerned that plaintiff's employment with the City might be disruptive. In light of these beliefs, Chief Taylor declined to recommend plaintiff for employment with the City in the various positions for which plaintiff applied.[3]

---

**3.** The City Commission makes all hiring and firing decisions with respect to the police department.

In December 1994, plaintiff applied for a police patrolman position with the City of Iola that he had seen advertised in the paper.[4] Sometime thereafter, he received a letter from Chief Taylor indicating that the City had hired another candidate for the position. Plaintiff later learned that the City hired John Cota, a twenty-two (22) year-old male, for the position. In late January 1995, plaintiff applied for a police dispatcher position he had seen advertised in the paper. Plaintiff received a letter from Chief Taylor indicating that the City had selected another candidate for the position. During discovery, plaintiff learned that the City hired Jenise Wade, a twenty-nine (29) year-old female, for the position.

After the City rejected plaintiff for the January 1995 dispatcher position, plaintiff retained counsel to inquire into the City's "categorical rejection" of plaintiff. In April 1995, plaintiff's counsel sent a letter to the City about his numerous applications and subsequent rejections.[5] The City replied in writing that plaintiff was not an appropriate candidate because interviews with various individuals revealed that plaintiff had "significant difficulty working with superiors and also an inability to effectively deal with other members of his force."

In September 1996, plaintiff again applied for the dispatcher position. This time, the City granted plaintiff an interview. A panel of four persons interviewed plaintiff for the position—Sheriff Ron Moore, Chief Rex Taylor, Dispatch Supervisor Gary Garver and Kathleen Roberts, the City Personnel Officer. At some point after the interview, plaintiff was informed that he had not been selected for the position. In fact, the City hired three individuals as dispatchers during September and October 1996—Juliet Oury, a twenty-two (22) year-old female; Lee Roberts, a forty-six (46) year-old male; and Brian Donovan, a twenty-nine (29) year-old male. Since September 1996, plaintiff has

not applied for any other positions with the City.

On July 8, 1997, plaintiff filed a charge of discrimination with the Kansas Human Rights Commission alleging that the City had denied him various positions on the basis of his age. After receiving his right-to-sue notice, plaintiff filed his complaint in February 1998. At the time he filed his complaint, plaintiff was sixty-one (61) years old.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex*

---

**4.** In June 1994, plaintiff again applied for a dispatcher or patrolman position. About six weeks later, however, plaintiff informed Chief Taylor that he wanted to withdraw his application because he had been hired by the City of Hoisington as its Chief of Police. In December 1994, plaintiff resigned his position as Police Chief for the City of Hoisington. In any event, plaintiff

has expressly stated that the City's failure to hire him during the summer of 1994 is not a part of this lawsuit.

**5.** Although it is uncontroverted that plaintiff's counsel sent a letter to the City in April 1995, the letter itself is not a part of the record before the court.

*Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Procedural Considerations

The City moves for summary judgment on all of plaintiff's claims that arose prior to September 1996 on the grounds that these claims are time-barred. Specifically, the City contends that the alleged discriminatory acts underlying these claims occurred well outside the limitations period. In response, plaintiff maintains that these claims are sufficiently related to events occurring within the time limitations period and, thus, constitute a "continuing course of conduct." As set forth in more detail below, the court concludes that an application of the continuing violation theory is not appropriate in this case. Thus, plaintiff's claims that the City failed to hire him in September 1993, April 1994, December 1994, and January 1995 are time-barred.

As such, the court grants the City's motion for summary judgment with respect to these claims.[6]

In a deferral state like Kansas, a plaintiff asserting a claim under the ADEA must file an administrative charge within 300 days after the alleged discriminatory act occurred. *See* 29 U.S.C. § 626(d). This filing is a prerequisite to a civil suit under the ADEA. *Bruno v. Western Elec. Co.,* 829 F.2d 957, 960 (10th Cir.1987). Plaintiff filed his administrative charge on July 8, 1997. Thus, according to the City, only those claims arising after September 14, 1996 (300 days prior to the filing of plaintiff's charge) are properly considered by the court. Plaintiff may recover for discriminatory acts occurring prior to the statutory limitations period, however, if at least one instance of the discriminatory practice occurs within the filing period and the earlier acts are "part of a continuing policy or practice that includes the act or acts within the statutory period." *See Mascheroni v. Board of Regents,* 28 F.3d 1554, 1561 (10th Cir.1994) (quoting *Martin v. Nannie & the Newborns, Inc.,* 3 F.3d 1410, 1415 (10th Cir.1993)).

To invoke the continuing violation exception to the charge-filing deadlines imposed by the ADEA, plaintiff must show either (1) a series of related acts taken against a single individual, one or more of which falls within the limitations period; or (2) the maintenance of a company-wide policy of discrimination both before and during the limitations period which evidences a pervasive, institutionalized system of discrimination. *See Purrington v. University of Utah,* 996 F.2d 1025, 1028–29 (10th Cir.1993); *Bruno,* 829 F.2d at 961. The record contains no evidence of a company-wide system of discrimination. Thus, plaintiff must demonstrate that the City engaged in a series of related discriminatory acts against him, at least one of which falls within the limitations period.[7] *See Mascheroni,* 28 F.3d at 1561

---

**6.** It is unclear whether plaintiff is asserting a failure-to-hire claim based on the application he submitted to the City in May 1993. To the extent plaintiff is asserting such a claim, it is time-barred for the reasons discussed in this section.

**7.** In his papers, plaintiff suggests that the City engaged in a "systematic" pattern of hiring younger people. The evidence does not support this bald assertion. In any event, in support of his argument that the continuing violation theory should apply to his claims, plaintiff expressly states that the City's failure to hire him constituted "a series of acts."

(citing *Purrington,* 996 F.2d at 1028).

To prove a series of related acts, plaintiff must show that the acts rise to the level of a "dogged pattern" of discrimination as distinguished from "isolated and sporadic outbreaks." *Purrington,* 996 F.2d at 1028 (quoting *Bruno,* 829 F.2d at 961). In analyzing whether alleged discriminatory acts are sufficiently related to constitute a continuing violation or whether such acts are discrete, isolated and completed acts which must be regarded as individual violations, the Tenth Circuit employs a three-factor inquiry: "(i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violation should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *See Mascheroni,* 28 F.3d at 1561 (quoting *Nannie & the Newborns,* 3 F.3d at 1415). As the Seventh Circuit recently explained:

> A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period. The clearest examples involve sexual harassment, where ... duration is often necessary to convert what is merely offensive behavior, and therefore not actionable under Title VII, into an actionable alteration in the plaintiff's working conditions.

*Dasgupta v. University of Wisconsin Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997) (citations omitted); *see Nannie & the Newborns,* 3 F.3d at 1415 (plaintiff introduced sufficient facts to raise triable issue on whether defendant engaged in continuing course of conduct where all incidents alleged by plaintiff involved sexual harassment and occurred consistently and frequently over the course of her employment). The alleged violations asserted by plaintiff were not of this character; they were discrete, separate acts and each would have independently supported an ADEA suit. Plaintiff's "failure to bring such a suit cannot be ascribed to the ambiguous or incomplete nature of the discrimination—to his being the victim of a campaign whose discriminatory character was not apparent at the time." *Dasgupta,* 121 F.3d at 1139–40. *Cf. Bruno,* 829 F.2d at 961–62 (series of acts constituted a continuing violation under ADEA where evidence demonstrated that defendant had engaged in a overall plan or continuous campaign to force plaintiff to retire).

Finally, the Tenth Circuit has cautioned that the "continuing violation doctrine is premised on the equitable notion that the statute of limitations should not begin to run until a reasonable person would be aware that his or her rights have been violated." *Nannie & the Newborns,* 3 F.3d at 1415 n. 6. Consistent with this principle, the Circuit has restricted the operation of the continuing violation doctrine "to those situations underscored by its equitable foundation." *Id.* In other words, "if an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine." *Id.*

Here, the nature of the alleged discriminatory acts should have triggered plaintiff's awareness of the need to assert his rights. *See Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557–58 (10th Cir.1994) (rejecting plaintiffs' equitable tolling argument that their ADEA causes of action did not accrue when they were given the challenged demotions and transfers, but only when their suspicions of age discrimination were aroused by watching a television program, "A Current Affair."). Even if plaintiff was not aware of the need to assert his rights in 1993 or 1994, he admits that his suspicions were aroused in January 1995 after his fifth application had been rejected. He hired an attorney in April 1995 to inquire into the reasons for the City's repeated rejection of his applications. Yet, plaintiff still failed to file a charge of discrimination until July 1997. According to plaintiff, when the City explained to his attorney that it believed plaintiff could not function effectively with others, plaintiff relied on the City's explanation and did not suspect age discrimination. This, however, does not excuse plaintiff from filing a charge of discrimination. As the Tenth Circuit has recognized, "[a] declaration of discrimination need not be issued before the statute of limitations begins

to run under the ADEA." *See Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558 (10th Cir.1994) (A cause of action generally accrues under the ADEA "on the date the employee is notified of an adverse employment decision.") (citations omitted). *See also Olson v. Mobil Oil Corp.*, 904 F.2d 198, 203 (4th Cir.1990) ("If equitable tolling applied every time an employer advanced a nondiscriminatory reason for its employment decisions, it would be 'tantamount to asserting that an employer is equitably estopped whenever it does not disclose a violation of the statute.' If this were the case, the [300]-day period for filing a charge would have little meaning."), *quoted in Hulsey*, 43 F.3d at 558.

In sum, the court concludes that plaintiff has failed to set forth sufficient facts to raise a triable issue on whether the City engaged in a continuing course of discrimination such that the court should consider the incidents that occurred prior to the 300–day filing limitations period. Accordingly, the court grants the City's motion for summary judgment with respect to plaintiff's failure-to-hire claims arising before September 1996.

## IV. Substantive Considerations

Having determined that all but one of plaintiff's claims are time-barred, the court addresses whether plaintiff has met his burden on summary judgment with respect to his remaining claim—the City's failure to hire plaintiff in September or October 1996 for the dispatcher position. Plaintiff contends that the City denied him this position on the basis of his age. As set forth in more detail below, the court concludes that plaintiff has failed to produce evidence from which a reasonable factfinder could conclude that the City's proffered explanation for its action was "unworthy of credence." Thus, the court grants summary judgment in favor of the City on plaintiff's remaining age discrimination claim.

The court analyzes plaintiff's discrimination claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir.1996). In the summary judgment context, plaintiff initially must raise a genuine issue of material fact on each ele-

ment of his prima facie case of discrimination. *See id.* Once plaintiff establishes his prima facie case, the burden shifts to defendant to offer a legitimate, nondiscriminatory reason for its employment decision. *Id.* (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995)). If the defendant comes forward with a nondiscriminatory reason for its actions, the burden then reverts to the plaintiff "to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (quoting *Randle*, 69 F.3d at 451). If the plaintiff proffers such evidence, the motion for summary judgment must be denied. *Id.* (quoting *Randle*, 69 F.3d at 452 n. 17).

■ To establish a prima facie case of age discrimination in the failure-to-hire context, plaintiff must demonstrate that (1) he was within the protected age group; (2) he was qualified for the position for which he applied; (3) he was adversely affected by an employment decision of the defendant; and (4) a younger person was hired. *See Corneveaux v. Cuna Mut. Ins. Group*, 76 F.3d 1498, 1502 (10th Cir.1996) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir.1994)). For purposes of its motion, the City concedes that plaintiff has adequately established his prima facie case.

Nonetheless, plaintiff has failed to raise any inference of pretext. The City has come forward with a legitimate, nondiscriminatory reason for failing to hire plaintiff for the dispatcher position. According to the City, Chief Taylor declined to recommend plaintiff for the positions for which plaintiff applied because he believed, based on his own contacts with plaintiff and information he obtained from other individuals, that plaintiff would not function effectively in the department and that his presence in the department would be disruptive.

■ In an effort to show that the City's proffered reason is pretextual, plaintiff first highlights that his significant experience and education in the area of law enforcement rendered him the most experienced applicant during the relevant time period. Indeed, the City concedes as much. The City's proffered

reason for failing to hire plaintiff, however, focused on plaintiff's (perceived) inability to work well with others and function effectively in the department—a reason wholly unrelated to plaintiff's experience or education in law enforcement. Thus, the mere fact that plaintiff was the most experienced applicant in terms of law enforcement work does not demonstrate that the City's proffered reason for failing to hire him was pretextual or unworthy of credence. In other words, plaintiff's experience would be relevant to the pretext analysis only if the City had relied on plaintiff's experience as a basis for failing to hire plaintiff. The City has not suggested that plaintiff's experience factored into its employment decision. Thus, the court disregards plaintiff's efforts to refute the City's nondiscriminatory reason with facts relating to his superior experience in the law enforcement field.

Next, plaintiff suggests that the City's proffered reason for its employment decision is false because Chief Taylor had already obtained negative feedback about plaintiff from several individuals prior to Chief Taylor's "personal invitation" to plaintiff to apply for a patrolman position in April 1994. According to plaintiff, Chief Taylor's invitation to plaintiff *after* having received negative feedback about plaintiff shows that the City's proffered reason is without merit. Significantly, however, Chief Taylor testified in his affidavit that he believed he contacted various individuals about plaintiff only after plaintiff had updated his application with the department in April 1994. In addition, the City's responses to plaintiff's first interrogatories indicate that Chief Taylor made these inquires after plaintiff requested to update his application in April 1994.[8]

In further support of his pretext argument, plaintiff suggests that the City failed to conduct an adequate background check on plaintiff in that the City only contacted one out of plaintiff's fourteen former employers and only two out of plaintiff's five personal references.[9] In essence, plaintiff complains that the City's investigation into plaintiff's qualifications was cursory at best. The ADEA does not require employers to visit with each and every reference given by an applicant prior to making its employment decision—it simply precludes employers from making that employment decision based on the applicant's age.[10] Thus, even if the City's investigation into plaintiff's background was something short of thorough (and the court is not suggesting that it was), this evidence, standing alone, does not permit an inference that plaintiff's age was a determining factor in the City's hiring decision. Such evidence "goes only to process and not to purpose or motivation, and could not provide a sufficient basis for a jury to find pretext for age discrimination." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 623 (10th Cir.1994); *accord Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir.1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given

---

8. In any event, the court doubts whether Chief Taylor's letter to plaintiff instructing him to respond in writing if he was still interested in the patrolman position can be construed as a "personal invitation." The more likely inference to be drawn from this evidence, given the fact that plaintiff had not actively applied for a patrolman position since September 1993 yet remained on the City's applicant list, was that Chief Taylor had a legitimate interest in ascertaining whether plaintiff had found suitable employment or whether he desired to be kept on the applicant list.

9. Along these same lines, plaintiff maintains that the two references Chief Taylor did contact never indicated that plaintiff could not effectively function within the department. Plaintiff is grasping at straws. Chief Taylor averred that one reference, Steve Smith, opined that plaintiff was not a

"people person" and that another reference, Chuck Apt, informed him that plaintiff was "hard to get along with" and "would not be an asset" to the department. While these individuals may not have expressly stated that plaintiff could not effectively function within the department, Chief Taylor drew that conclusion from his discussions with these individuals and others. *See Jacobs v. Delta Air Lines, Inc.*, 156 F.3d 1243, 1998 WL 514620, at *3 (10th Cir. Aug.13, 1998) (challenging the veracity of allegations against plaintiff "avoids the relevant inquiry—i.e., whether Delta believed them, and acted in good faith upon that belief in terminating him").

10. Moreover, plaintiff directs the court to no case law or evidence requiring the City to conduct a more thorough investigation than the one it conducted.

by the employer for its employment decision were pretextual."); *Jacobs v. Delta Air Lines, Inc.*, 156 F.3d 1243, 1998 WL 514620, at *3 (10th Cir. Aug.13, 1998) (even assuming Delta failed to investigate thoroughly the harassment allegations against plaintiff, "this complaint challenges the process applied rather than Delta's purpose or motivation" and, thus, cannot support an inference of pretext). In short, plaintiff has failed to show how the City discriminated against him by allegedly failing to conduct a thorough investigation into his background and references. *See Randle*, 69 F.3d at 454–455.[11]

Finally, plaintiff maintains that he "personally observed a trend of hiring younger people" for employment in the City's police department. Plaintiff attempts to support this observation with statistics that, according to plaintiff, demonstrate a clear pattern of discriminatory hiring practices. Specifically, the City hired twenty-eight (28) persons as patrolmen or dispatchers between September 1993 and November 1996. Of these twenty-eight persons, only four were over the age of forty and only one was over the age of 50. While statistical data may create an inference of discrimination, such data may be "so flawed as to render it insufficient to raise a jury question." *Doan v. Seagate Technology, Inc.*, 82 F.3d 974, 979 (10th Cir.1996) (citing *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746 (10th Cir.1991)), *cert. denied*, —— U.S. ——, 117 S.Ct. 684, 136 L.Ed.2d 608 (1997). Statistics taken in isolation are generally not probative of age discrimination. *Id.* (quoting *Jones v. Unisys Corp.*, 54 F.3d 624, 632 (10th Cir.1995)).

Here, plaintiff's statistical evidence is flawed for several reasons. First, plaintiff's data shows only the ages of those individuals who were hired by the City during the relevant time period. It fails, however, to show how many individuals, of what age, were *not hired* by the City during that peri-

od. *See Kuhn v. Ball State University*, 78 F.3d 330, 332 (7th Cir.1996) (in failure-to-promote case, list of persons promoted by University was "next to worthless" without information concerning how many people, of what age, were not promoted). Without knowing whether any individuals in the protected category other than plaintiff applied for the dispatcher or patrolman positions during the relevant period (and, if so, how many), the court is unable to draw an inference of discrimination from plaintiff's evidence. Second, plaintiff's data fails to eliminate nondiscriminatory explanations for the numerical disparity by showing disparate treatment between similarly situated individuals. *See Doan*, 82 F.3d at 979 ("Statistical evidence which fails to properly take into account nondiscriminatory explanations does not permit an inference of pretext.") (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1456 (10th Cir.1994)). Plaintiff's statistical evidence, for example, fails to compare the qualifications and experience of those individuals outside the protected category who were hired with the qualifications and experience of those individuals within the protected category who were not hired. In other words, in order for plaintiff's data to have probative significance, it would have to demonstrate that the individuals over forty years of age who were not hired had qualifications and experience comparable to the individuals under forty years of age who were hired and that the individuals were similarly situated in any other relevant aspects. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 532–33 (10th Cir.1994); *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 746–47 (10th Cir.1991). Finally, plaintiff's small sample size significantly lessens the value of plaintiff's statistical data. As the Tenth Circuit has cautioned, "the smaller the sample size, the greater the likelihood that the underrepresentation reflects chance rather than dis-

11. Plaintiff also claims that the City's "sudden" decision to grant him an interview after receiving an inquiry from plaintiff's counsel demonstrates the City's effort "to cover up [its] systematic age discrimination." Again, this evidence goes to the City's processes rather than to its purpose or motivation. The mere fact that the City decided to grant plaintiff an interview—more than one year after plaintiff's counsel contacted the City—does not permit an inference that plaintiff's age was a determining factor in the City's decision not to hire him after that interview and does not suggest that the City's proffered reasons for failing to hire plaintiff were pretextual. If anything, such evidence shows that the City, despite its prior conclusions that plaintiff was not an appropriate candidate, granted plaintiff an interview out of an abundance of caution or in an effort to give plaintiff the benefit of the doubt.

criminatory practices." *Baker v. Ogden Servs. Corp.*, 74 F.3d 1248, 1996 WL 15490, at *4 (10th Cir. Jan.16, 1996) (citations omitted); see *Lucas v. Dover Corp.*, 857 F.2d 1397, 1403 (10th Cir.1988) (sample size of 18 "must be evaluated with caution"). In light of its significant flaws, plaintiff's statistical sample simply does not permit an inference of age discrimination.

In sum, plaintiff has not come forward with sufficient evidence from which a reasonable factfinder could draw an inference that the City's proffered reasons for failing to hire plaintiff were unworthy of belief or that plaintiff's age was a determining factor in the City's decision. Accordingly, the court grants the City's motion for summary judgment on plaintiff's age discrimination claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 29) is **granted** and plaintiff's complaint is dismissed in its entirety.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's motion to strike plaintiff's supplemental response to defendant's motion for summary judgment (doc. # 37) is **denied as moot.**

IT IS SO ORDERED.